ROBERTSON, Trustee, et al. v. KNIGHTEN et al., Trustees.

No. 30994. June 29, 1943.

*139 P. 2d 601.*

N. E. McNeill and Primus C. Wade, both of Tulsa, for plaintiff in error J. Tyler Smith.

F. J. Lucas, of Tulsa, for defendants in error.

RILEY, J. The subject matter of this appeal is an undivided one-fourth interest in lots 11 and 12, block 2, Northside addition to the city of Tulsa.

J. A. Knighten, Sam Tally, and H. R. Stovall, trustees of Coal Creek Lodge No. 88, A. F. & A. M., operating under a charter from Saint John's Grand Lodge, A. F. & A. M., Prince Hall affiliation, commenced this action against S. Robertson, trustee, and the unknown trustees of Silver Moon Lodge No. 50, and Willie A. Elliott, to quiet title to said one-fourth interest in said lots.

Plaintiffs deraign their title as follows: A warranty deed dated February 26, 1925, from James Cherry and others to Silver Moon Lodge No. 50, by S. Robertson, trustee; merger or consolidation of Silver Moon Lodge No. 50 with Coal Creek Lodge No. 88.

They allege that by reason of said merger or consolidation, title to said one-fourth interest in said lots vested in plaintiffs as trustees for Coal Creek Lodge No. 88. They allege that defendant Willie Elliott claimed some right, title, or interest in said lots which cast a cloud upon plaintiffs' title.

Willie A. Elliott, by separate answer, disclaimed any interest in said lots. Thereafter, on claim of ownership, J. Tyler Smith was made a party defendant. He filed an answer and cross-petition wherein he alleged that he was the owner of an undivided one-fourth interest in the lots. He deraigned his title as follows: (a) Warranty deed dated September 12, 1935, from Theo. Baughman, worshipful master and trustee of Silver Moon Lodge No. 50, to Willie A. Elliott; (b) warranty deed dated February 25, 1941, from Willie A. Elliott to J. Tyler Smith.

Plaintiffs answered the cross-petition by general denial and specifically alleged that the deed relied upon from Theo. Baughman, worshipful master and trustee of Silver Moon Lodge No. 50, if executed, was without consent or authority of a majority of the trustees of Silver Moon Lodge No. 50, and that Theo. Baughman was without authority to execute such deed.

The cause was tried to the court, resulting in a decree quieting title in plaintiffs as trustees of Coal Creek Lodge No. 88. J. Tyler Smith appeals.

The principal contention is that the decree is not supported by sufficient evidence; is contrary to the evidence; and is contrary to law.

The record discloses that on February 26, 1925, James Cherry and others executed and delivered a general warranty deed conveying the lots involved to Coal Creek Lodge No. 88, A. F. & A. M., by J. A. Knighten, trustee; Sand Springs Lodge No. 192, A. F. & A. M., by T. D. Jackson, trustee; Victory Lodge No. 80, A. F. & A. M., by J. E. Hardy, trustee; and Silver Moon Lodge No. 50, by S. Robertson, trustee. J. A. Knighten, witness for plaintiffs, testified that the three lodges mentioned in the deed, other than Coal Creek Lodge No. 88, had been consolidated with Coal Creek Lodge No. 88, and that such consolidation was "ordered by the grand master of this jurisdiction"; that this was done in accordance with the by-laws and regulations of the lodges and by the deputy grand master of the district; that there was no written order consolidating them, but that they did have the minutes of the meeting where the deputy grand master was present and made a speech on May 5, 1935, but this was objected to as not being the best evidence. The objection was sustained, and thereupon plaintiffs produced what was identified as the minutes of a meeting of Coal Creek Lodge No. 88 of April 5, 1935. The material parts of the minutes of the meeting are:

"Tulsa, Okla., April 5, 1935.

"Coal Creek No. 88 wias call to order on the 3rd degree of Maysonry, by the W. M. J. A. Knighten. Officers present at this meeting . . . the craft was exammond and found to be Master Masons . . . Motion by G. J. Barker Second by F. T. Smith that Coal Creek accept all members of Victora Lodge No. 80 become fullfled members which was Seven at this meeting . . . Motion by Dr. Crafford Second by Bro. Gormon that members of Silver Moon and Tuskin come in as did from Victora and Sand Spring Motion carried.

"J. A. Knighten, W. M.

"Deputy G. M. Dr. D. W. Crawford stated that he was orded to take all charters and consolladate with one Lodge Coal Creek was accepted by the craft to be the Lodge.
"G. J. Barker Sect."

Plaintiffs then introduced an instrument attested by the seal of St. John's Grand Lodge A. F. & A. M. of Oklahoma, as follows:

"Most Worshipful Saint John's Grand Lodge A. F. and A. M.
"Oklahoma Jurisdiction
"(Prince Hall Affiliation)

"Office of
"LON McNEIL, GRAND MASTER
"301 South B Street
"Eufaula, Oklahoma.

"April 28th, 1941.

"To All Lodges and Orders of the Eastern Star conected and concerned with St. John's Grand Lodge and jurisdiction of the State of Oklahoma Take notice that the following named lodges after failing to function for some time have been declared null and void and all members functioning are recognized as members of Coal Creek Lodge No. 88 located in Tulsa, Oklahoma.

"The lodges herein referred to are Victory lodge No. 80. Silver Moon Lodge No. 50, Sand Springs lodge No. 192. All the lodges mention are located in and around Tulsa, Oklahoma.

"Sealed and signed on this The 28th., day of April 1941.

"E. T. Busby
"Grand Secretary,
"Chandler, Okla.

"Lon McNeil
"Grand Master
"Seal   Eufaula, Okla."

Knighten then testified that since April 5, 1935, all the other lodges came in and some from Silver Moon Lodge, and since that time Coal Creek Lodge has had possession and control of the property and used the same for lodge purposes.

This is substantially all the evidence upon which the court held that the one-fourth interest of the Silver Moon Lodge No. 50 passed to and became the property of Coal Creek Lodge No. 88. There was no evidence as to the constitution and by-laws of the Grand Lodge showing the manner of organization or the control, if any, it had over the subordinate lodges of the order, or their property. There is nothing whatever to show what the constitution and by-laws of the Grand Lodge, or of the subordinate lodges, provide with relation to the merger or consolidation of subordinate lodges. There is nothing to show that under the constitution and by-laws of the order the grand master, or the grand lodge itself, has the power to arbitrarily merge or consolidate subordinate lodges and transfer property from one lodge to another.

Though there be such provision in the constitution of the general assembly, it might be invalid as applied to property rights in the subordinate lodges. The rule is that the general assembly of an unincorporated organization or association cannot be authorized by the constitution of the order with governmental powers which will enable it by its order or edict, without a hearing, to dissolve a local assembly and to divest the latter of its title to the property derived from its own members and vest it in itself. 4 Am. Jur. 490. The same rule should apply to the arbitrary dissolution of a local assembly and transfer of its property to another local assembly. Generally speaking, the dissolution of a society

or club entitles the members thereof, at the time of dissolution, to a distribution of the property in accordance with their interests. 4 Am. Jur. 491.

In Wicks v. Monihan et al., 130 N. Y. 232, it is held:

"An unincorporated association of seven or more members, organized as a local assembly of the organization known as 'Knights of Labor,' is not divested of title to property contributed and owned by the associated members, by an annulment of its charter, and cannot be deprived thereof by any decree of the general assembly."

In the opinion it is said:

"The property of Local Assembly No. 4119 was not derived from the General Assembly, but was contributed and owned by the associated members of No. 4119, and held by an absolute title as perfect and unconditional, so far as is shown by the case, as is the title by which any person or corporation holds its individual property. To hold that the General Assembly can by a decree divest the title to property and vest it in itself, is giving to it a power which is forbidden to be exercised by Congress, or by the Legislature of any state. Bills confiscating the property of citizens, or of associations, without judicial process, are forbidden by the Constitution; and no person, corporation or association authorized to acquire and hold property, can be divested of it by the fiat of any organization, nor in any way without its consent, or by due process of law."

In that case the constitution of the general assembly provided:

"Art. 5, § 1. It shall be the duty of the district recording secretary to collect and take charge of the charter, seals, books, money and other property of any Locals attached to the District Assembly that may lapse, and shall give receipt to the officer of the Local surrendering the same."

In this case not even that much authority is shown to exist.

It is well settled in this jurisdiction that:

"A person who has no interest in the title to real estate cannot maintain an action to remove a cloud upon the title to such real estate, or to quiet title thereto." Moore v. Barker, 186 Okla. 312, 97 P. 2d 776.

In the opinion it is said:

"It is the prevailing rule in this jurisdiction that in a statutory action to quiet title plaintiff must recover, if at all, upon the strength of his own title, and not on the weakness of his adversary's claim. McMurrough v. Alberty (1923), 90 Okla. 4, 215 P. 193. It is not necessary that plaintiff have title paramount to all others, but he must at least have some interest in title and that interest must be paramount to the claim of his adversary."

Under the record the evidence is clearly insufficient to support the decree quieting title of the property involved in Coal Creek Lodge No. 88. For this reason the decree must be reversed. But under the record we cannot direct a decree quieting the title in J. Tyler Smith. The rule we have applied to the claim of Coal Creek Lodge No. 88 must be applied to the claim of J. Tyler Smith in his cross-petition. He must depend upon the strength of his own title and not upon the weakness of the title of Coal Creek Lodge No. 88.

He relies upon the deed dated September 12, 1935, from Theo. Baughman, worshipful master and trustee of Silver Moon Lodge No. 50, to Willie A. Elliott, and the deed dated February 28, 1941, from Willie A. Elliott to him. As authority for the deed by Baughman, worshipful master and trustee, he relies upon the resolution purporting to have been adopted by Silver Moon Lodge No. 50, on September 11, 1935. It is admitted that but four members of said lodge were present at the adoption of said resolution. There is evidence to the effect that under the by-laws and rules and regulations of the order the presence of at least seven members of a subordinate lodge is necessary before a valid meeting may be held. Smith testified that the presence of three members was sufficient. The by-laws not being in evidence, we cannot say, as a matter of law, that the resolution was valid. Furthermore, the legal title to the one-fourth interest

of Silver Moon Lodge No. 50 in the lots was originally taken in the name of S. Robertson, trustee. There is no showing how such title was divested. There is no showing that Robertson was ever removed as trustee or that Baughman was elected as trustee and successor to the title held by Robertson. Under the record as it stands, the evidence is not sufficient to warrant a decree quieting title in J. Tyler Smith.

The decree is reversed and the cause is remanded for further proceedings in consistence with the views herein expressed.

CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.