The SEMINOLE NATION, Appellant,

v.

Nelly WHITE, Chicago, Rock Island and Pacific Railroad Company and Fordee Rhoades Oil Company and United States of America, Intervener, Appellees.

No. 4986.

United States Court of Appeals
Tenth Circuit.

May 25, 1955.

W. F. Semple, Tulsa, Okl., for appellant.

Edmund B. Clark, Washington, D. C. (Perry W. Morton, Washington, D. C., Frank D. McSherry, Muskogee, Okl., and Roger P. Marquis, Washington, D. C., on the brief), for United States, appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This suit involves the title to a strip of land under the Chicago, Rock Island and Pacific Railroad Company's right-of-way in Seminole County, Oklahoma, formerly Seminole Indian Nation. The question is whether it belongs to the Seminole Tribe, which brought this suit in its quasi sovereign capacity to quiet its title, or to the Seminole Indian allottee of the adjoining and adjacent lands, who has since executed an oil and gas lease covering part of the allotment, to the appellee, Fordee Rhoades Oil Company. The trial court held for the Indian allottee, and the Tribe has appealed.

The agreed facts found by the trial court show that Nelly White, a duly enrolled full-blood Seminole Indian, was allotted as her distributive share of the lands in the Seminole Nation: "Lot 1, less three and 30/100 (3.30) acres occupied as right-of-way by the Choctaw,

Oklahoma and Gulf Railroad"; "The Southeast Quarter of the Northeast Quarter, less three and 09/100 (3.09) acres occupied as right-of-way" by the same Railroad; and "The Northeast Quarter of the Southeast Quarter, less three and 8/100 (3.08) acres, occupied as a right-of-way" by the same Railroad, all in Section 1, Township 8 North and Range 6 East. At the time of the trial, Nelly White was the owner of the described land, except the Northeast Quarter of the Southeast Quarter, which she had sold. On August 15, 1947, she executed a departmental oil and gas lease for a primary term of ten years in favor of the Fordee Rhoades Oil Company covering the described land, less the described acres for the railroad right-of-way. The Chicago, Rock Island and Pacific Railroad Company is the successor in interest of the Choctaw, Oklahoma and Gulf Railway, which, prior to the allotment, had constructed a railroad across the land. This railroad has been continuously operated to the present time.

In determining the acreage to which the allottee, Nelly White, was entitled as her distributive share of the tribal land, consideration was given to the land included in the railroad right-of-way, and additional acreage was allowed as compensation for it. And, the Tribe claims title to the described strip of land on the theory that it was never allotted to Nelly White, but was excepted from the original grant, and title thereto reserved in the Tribal Nation, subject only to the right-of-way.

Section 14 of the Act of April 26, 1906, 34 Stat. 142, provides that "the lands in the Choctaw, Chickasaw, Cherokee, Creek and Seminole nations reserved from allotment or sale under any Act of Congress for the use or benefit of any person, corporation, or organization shall be conveyed to the person, corporation, or organization entitled thereto: Provided, That if any tract or parcel thus reserved shall before conveyance thereof be abandoned for the use for which it was reserved by the party in whose interest the reservation was made, such tract or parcel shall revert to the tribe and be disposed of as other surplus lands thereof: Provided further, That this section shall not apply to land reserved from allotment because of the right of any railroad or railway company therein in the nature of an easement for right of way, depot, station grounds, water stations, stock yards or other uses * * * title to which tracts may be acquired by the railroad or railway company under rules and regulations to be prescribed by the Secretary of the Interior * * * but if any such company shall fail to make payment within the time prescribed by the regulations or shall cease to use such land for the purpose for which it was reserved, title thereto shall thereupon vest in the owner of the legal subdivision of which the land so abandoned is a part, except lands within a municipality the title to which, upon abandonment, shall vest in such municipality." Concededly, these lands are not located within any municipality, and it is agreed that the Railroad did not make payments for the lands in question as provided in the Act. The trial court held that the Railroad acquired only a right-of-way across the lands, and it has not appealed.

The Tribe construes the language in the deed as expressly reserving the strip of land from the allotment, subject to the easement rights in the Railroad; and contends that if Section 14 of the 1906 Act is construed to vest title to the strip of land in the allottee, it takes the Tribe's property and gives it to the allottee without due process.

In support of its construction of the deed, the Tribe points to the fact that the Indian allottee was deeded other land in compensation for the acreage included in the railroad right-of-way, and says that this fact is indicative of the controlling intention to except the land involved from the allotment; that any other construction would operate to give the Indian allottee more than her distributive share of the tribal lands in violation of the spirit and purpose of the acts and treaties dissolving tribal government and

allotting tribal lands in severalty of equal value to the members of the Tribe.

In holding that the title to the strip of land in question vested by allotment from the Seminole Nation in Nelly White, subject only to the Railroad right-of-way, the trial court followed the unmistakable holding of this court in United States v. Magnolia Petroleum Co., 110 F.2d 212, 218, followed and affirmed in United States v. Drumb, 152 F.2d 821, involving deeds to allotted lands containing identical words of reservation. After announcing the general rule that the servient estate in a strip of land set apart for a railroad right-of-way or other similar purposes passes with a conveyance of the fee to the abutting legal subdivision or tract out of which the strip or small area was carved, even in the absence of express provision to that effect, this court went on to say that Congress enacted Section 14 with that general rule in mind. With unmistakable clarity and lucidity, the court pointed out the "marked difference" in the statutory treatment of land reserved for institutional use and abandoned for such purpose prior to conveyance, and land reserved for right-of-way or other railroad purposes, as in the case there and here. The court construed the pertinent statute, particularly Section 14, as a plain grant of land reserved from the allotment for railroad purposes to the owner of the legal subdivision out of which it was taken where the railroad company has a right in the nature of an easement but fails to acquire legal title by payment as provided by the statute. The court thought the "marked difference" between lands reserved for institutional purposes—usually larger tracts —and small strips reserved for railroad right-of-way, would avoid the "plain evils which would arise from the retention in the tribe as remote dedicator of a strip or other small tract reserved for right-of-way or other railroad use. * * * To say that on failure of a railroad company to make payment of a narrow strip reserved for a right-of-way or on its abandonment for such purpose, title rests in the tribe, would be inconsistent with the purpose and intent of the statute as a whole, would be out of harmony with the manifest purpose of section 14, and would be at variance with the rule against retention of title in remote dedicators. It would be an interpretation not warranted by the language or history of the section."

The only suggested distinction between the Magnolia case and our case is that in the former case, the right-of-way had been abandoned. But, no valid reason is suggested for a different application of the Act to rights-of-way which have not been abandoned. The fact of abandonment was urged as a reason for the inapplicability of the Act in the Magnolia case. We regard the factual distinction as of no significance. In either case the title is to a small tract of land, and the question is whether the servient estate shall be vested in the owner of the adjoining and abutting land or a remote dedicator, and the general rule recognized and followed in the Magnolia case is equally applicable.

On the question of due process, it is sufficient to say that we construe the language of the deed from the Tribe as vesting title in the allottee under the general rules of construction quite apart from the incidence of Section 14. But, we have already affirmed the power of Congress "to make a disposal of these contingent reversionary interests in railroad rights of way * * *." And, in the exercise of that power, " 'the United States will be governed by such considerations of justice as will control a Christian people in their treatment of an ignorant and dependent race * * *' " and " 'the propriety or justice of their action towards the Indians, with respect to their lands, is a question of governmental policy.' " United States v. Drumb, supra, 152 F.2d at page 823.

The judgment is affirmed.