**ST. LOUIS–SAN FRANCISCO RAIL-WAY COMPANY, a corporation, Appellant,**

v.

**The TOWN OF FRANCIS, a municipal corporation, Appellee.**

**No. 5597.**

United States Court of Appeals
Tenth Circuit.

Nov. 5, 1957.

Harvey L. Harmon, Oklahoma City, Okl. (James L. Homire, St. Louis, Mo., and Satterfield, Franklin & Harmon, Oklahoma City, Okl., were with him on the brief), for appellant.

G. C. Mayhue, Jr., Ada, Okl. (Kerr, Lambert, Conn & Roberts, Ada, Okl., were with him on the brief), for appellee.

Before MURRAH, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

St. Louis-San Francisco Railway Company, through its predecessor in title, acquired a right-of-way through the Indian Territory by virtue of 1896 and 1902 Congressional Acts. The right-of-way passed through the Town of Francis, Potontoc County, Oklahoma. The plaintiff, Great Western Oil & Gas Company, a corporation,[1] was the owner of oil and gas leases covering lots abutting the railroad right-of-way within the corporate limits of the town. This action was brought by Great Western to quiet title to the minerals underlying the right-of-way. The Railroad denied Great Western's title and alleged that it was the owner in fee simple of the right-of-way land, subject only to a conditional reverter. The Town cross-claimed, seeking to have title to the land quieted in it, subject only to the right of the Railroad to use the surface for railroad purposes. The trial court heard the case on stipulated facts and concluded that the Railroad had obtained only an easement for railroad purposes, and that by reason of the Act of Congress of April 26, 1906, 34 Stat. 137, 142, Sec. 14, the Town, not the owners of the abutting lots, was the owner of the servient estate in the land acquired by the Railroad, and was the owner of the minerals in and under the same. Great Western did not appeal,

therefore our question is limited to a determination of the type of estate acquired by the railroad in the land taken under the two Acts.

By the Act of Congress of March 30, 1896, 29 Stat. 80, the Railroad's predecessor was authorized to take a one hundred foot strip of land for right-of-way purposes and additional lands for stations. Thereafter the Railroad acquired additional land within the corporate limits of the Town under the provisions of the Enid-Anadarko Act of February 28, 1902, 32 Stat. 43, Sec. 14 and Sec. 22, which provided for the taking of lands "when necessary for yards, roundhouses, turntables, machine shops, water stations, and other railroad purposes." The 1896 and 1902 Acts authorized the Railroad to acquire a right-of-way for all purposes of a railway, and for no other purpose. It was also provided in each Act: "That no part of the lands herein authorized to be taken shall be leased or sold by the company, and they shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railway, telegraph, and telephone lines; and when any portion thereof shall cease to be so used such portion shall revert to the nation or tribe of Indians from which the same shall have been taken." Each Act provided that payment should be made for lands acquired for the designated purposes. Some of the land taken within the corporate limits of the Town was acquired by condemnation provided for under the Enid-Anadarko Act. It is agreed that the Railroad has paid all amounts required by the 1896 and 1902 Acts and that the lands are now, and have been since acquired by the Railroad, occupied and used for railroad purposes.

The nature of the estate in rights-of-way acquired by railroads through the Indian Territory in Oklahoma under similar Acts of Congress has been before this court on different occa-

---

[1] The appellant will be referred to herein as "Railroad", the appellee as "Town", and Great Western Oil & Gas Company as "Great Western."

sions. In United States v. Magnolia Petroleum Co., 10 Cir., 110 F.2d 212, 218, it was held that a railroad right-of-way acquired under the provisions of such Acts was an interest "in the nature of an easement", and that under the Act of April 6, 1906, 34 Stat. 137, 142, Sec. 14, the servient estate in the right-of-way was in the owner of the fee of the abutting land. United States v. Drumb, 10 Cir., 152 F.2d 821; Oklahoma City-Ada-Atoka Ry. Co. v. City of Ada, 10 Cir., 182 F.2d 293; and Seminole Nation v. White, 10 Cir., 224 F.2d 173, certiorari denied 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787, are to the same effect.[2] The Railroad insists that these cases are distinguishable because in each of them, except in the Seminole Nation case, the railroad had never occupied or used the lands for railroad purposes and that no decision has determined the estate acquired where the railroad has made all of the required payments under the granting Acts and has exclusively and continuously occupied the land for railroad purposes. We do not think this argument is tenable. If the Railroad actually acquired the right-of-way and other land as authorized by statute, as it unquestionably did, then the method of acquisition or the payment therefor would be of no significance. The extent of the estate that may be acquired is specifically limited by the authorizing statutes. Abandonment or failure to pay the required amounts may result in forfeiture of the right, but neither abandonment nor failure to pay has any relation to the nature of the estate which the railroad may acquire under the statutes.[3]

■ The 1906 Act was for the purpose of making final disposition of the affairs of the Five Civilized Tribes of Indians in Indian Territory. Section 14 of that Act was designed to dispose of contingent interests in railroad rights-of-way and other property which might revert to the tribes. By Section 14 Congress intended to apply the general rule that if there were a reverter, the ownership of the servient estate should pass to the abutting landowner. United States v. Drumb, supra. The section excepted lands within the corporate limits of a municipality, and provided that in such cases the title should vest in the municipality. The Railroad did not avail itself of the right to acquire the fee to the right-of-way lands as authorized by the aforesaid Section 14.[4] It was held in

2. In a recently decided case, Chickasha Cotton Oil Co. v. Town of Maysville, 10 Cir., 249 F.2d 542, this court, in deciding that the Town was the owner of the servient estate of railroad lands within the corporate limits of the Town, assumed that these cases held that the railroad acquired nothing more than an easement. See also United States v. Union Pac. R. Co., 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693.

3. In the Seminole Nation case, 224 F.2d 173, 175, certiorari denied 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787, where the land was in actual use by the railroad, this court said:

"The only suggested distinction between the Magnolia case and our case is that in the former case, the right-of-way had been abandoned. But, no valid reason is suggested for a different application of the Act to rights-of-way which have not been abandoned. The fact of abandonment was urged as a reason for the inapplicability of the Act in the Magnolia case. We regard the factual distinction as of no significance. In either case the title is to a small tract of land, and the question is whether the servient estate shall be vested in the owner of the adjoining and abutting land or a remote dedicator, and the general rule recognized and followed in the Magnolia case is equally applicable."

4. Section 14 (34 Stat. 142), contains this provision:

"* * * Provided further, That this section shall not apply to land reserved from allotment because of the right of any railroad or railway company therein in the nature of an easement for right of way, depot, station grounds, water stations, stock yards or other uses connected with the maintenance and operation of such company's railroad, title to which tracts may be acquired by the railroad or railway company under rules and regulations to be prescribed by the Secretary of the Interior at a valuation to be determined by him; but if any such company shall fail to make payment within the time prescribed by the regulations

Chickasha Cotton Oil Co. v. Town of Maysville, 10 Cir., 249 F.2d 542, that this constituted an abandonment of the fee title. It follows that the servient estate in the lands in question here, together with the minerals therein, is in the Town, subject to the use by the Railroad for specified purposes only.

Affirmed.

or shall cease to use such land for the purpose for which it was reserved, title thereto shall thereupon vest in the owner of the legal subdivision of which the land so abandoned is a part, except lands within a municipality the title to which, upon abandonment, shall vest in such municipality."