**CITY OF WILBURTON, OKLAHOMA, Magnolia Petroleum Company, Deno Maggi and Mike Hugo, Appellants,**

v.

**Alex SWAFFORD, Appellee.**

**No. 5663.**

United States Court of Appeals
Tenth Circuit.

March 10, 1958.

Rehearing Denied April 14, 1958.

James E. Horigan, Oklahoma City, Okl. (M. C. Spradling, Tulsa, Okl., Bob Perdue, Wilburton, Okl., and Basil S. Null, Hartshorne, Okl., on the brief), for appellants.

Neal E. McNeill, Jr., Tulsa, Okl. (Neal E. McNeill, Tulsa, Okl., on the brief), for appellee.

Before MURRAH, LEWIS and BREITENSTEIN, Circuit Judges.

MURRAH, Circuit Judge.

This suit involves the title to the abandoned right of way of the M. K. & T. Railway Company within the limits of the City of Wilburton, Latimer County, Oklahoma. The parcels were originally Indian lands of the Chickasaw and Choctaw Tribes, and the first and principal question is whether, upon abandonment, title thereto reverted to the City of Wilburton, or to the successor to the patentee from the tribes. The answer turns on a construction of federal law relating to disposition of Indian lands. Exercising its jurisdiction based upon a federal question and requisite amount in controversy, the trial court quieted the title of the successor to the patentee, and the City of Wilburton and those claiming under it have appealed.

The decisive facts are undisputed. The M. K. & T. Railway acquired the right of way in 1906 from the Choctaw Indian Tribe under Section 13 of the Enid-Anadarko Act of February 28, 1902 (32 Stat. 43), which authorized railroads to condemn rights of way for railroad purposes across Indian Territory. The right of way in litigation thus acquired was upon segregated coal and asphalt tribal lands reserved from allotment under Sections 26(d) and 58 of the Choctaw-Chickasaw Agreement, approved July 1, 1902, 32 Stat. 641. About the time the Railway came into possession of the right of way Congress passed the Act of April 26, 1906 (34 Stat. 137) to provide for the final disposition of the affairs of the Five Civilized Tribes, including the sale or disposition of all unallotted surplus tribal lands and assets.

Section 13 of the latter Act continued the reservation of all coal and asphalt lands, whether leased or unleased, until the expiration of the existing leases, or until otherwise provided by law. And, Section 14 of the Act provided in effect that all lands theretofore reserved from allotment for the use and benefit of any person, corporation or organization should be conveyed to such person, corporation or organization entitled thereto;

provided that if, before conveyance, such reserved lands be abandoned for the use for which they were reserved, they would revert to the Tribe for disposition as other surplus lands; provided further, however, with respect to railroad rights of way or easements in the nature of right of way for railroad purposes, the railroad could acquire title thereto under rules and regulations to be prescribed by the Secretary of the Interior, at a valuation to be determined by him. But, if any railroad company failed to acquire the title to its right of way in accordance with the prescribed regulations, or ceased to use the land for the purpose for which it was reserved, title would thereupon vest in the owner of the legal subdivision of which the land so abandoned was a part, "except lands within a municipality, the title to which, upon abandonment, shall vest in such municipality." The adjudicated purpose of Section 14 was to avoid the evils arising from the retention in the tribe, as remote dedicators, strips or small tracts reserved for right of way purposes for railroad use. And see United States v. Magnolia Petroleum Co., 10 Cir., 110 F.2d 212; United States v. Drumb, 10 Cir., 152 F.2d 821. The Railroad did not acquire title to the land as provided in the regulations, and in 1912, Congress passed an act to provide for the sale of the surface of the reserved segregated coal and asphalt land of the Choctaw-Chickasaw Nations, said surface to "include the entire estate save the coal and asphalt reserved." 37 Stat. 67, § 1. The Act specifically provided that when the full purchase price of any such segregated land had been paid as provided in the Act, the chief executives of the two tribes would execute and deliver, with the approval of the Secretary of the Interior, to each purchaser "an appropriate patent or instrument of conveyance, conveying to the purchaser the property so sold, and all conveyances made under this Act shall convey the fee in the land with reservation to the Choctaw and Chickasaw Tribes of Indians of the coal and asphalt in such land * * *" § 7.

In pursuance of the 1912 Act, supra, a plat of Latimer County, Oklahoma, Township Addition Number 4, was filed in the office of the Secretary of the Interior as a part of the segregated coal and asphalt lands of the Tribes. Among the lots surveyed and platted therein were lots 69 and 70, and delineated thereon was the north 1.15 acres of lot 69, and the north 5 acres of lot 70, then occupied by the M. K. & T. Railway Company for railroad purposes. In August 1930, the Secretary of the Interior approved a patent issued by the Choctaw-Chickasaw Nations, conveying to the Degnan-Mc-Connell Coal and Coke Company, among other lands, " * * * Lot No. Sixty-nine (69), including one and 15/100 (1.15) acres subject to right of way for the Missouri, Kansas and Texas Railway * * * and Lot No. Seventy (70) including five and no/100 (5.00) acres subject to right of way for M. K. & T. Railway * * *", and subject to all reservations, restrictions, covenants and conditions contained or provided for in the Act of February 19, 1912, under which the above mentioned surface was sold. By mesne conveyance, the appellee, Swafford, acquired by executor's deed, "Lot 69 * * * less that part conveyed by deed recorded in Book 25, page 521; * * * Lot 70 * * * less that part conveyed by deed recorded in Book 32, Page 85 * * *."

Thereafter, and in 1948, the City of Wilburton extended its boundaries to include for the first time the lands involved here, and in the following March 1950, the M. K. & T. Railway officially abandoned the right of way and removed its tracks and improvements therefrom. It now disclaims any interest therein. The appellee has paid ad valorem taxes on the lands since the year 1953.

No one denies that the servient estate in the right of way remained in the Tribe until the surface estate was conveyed by patent in pursuance of the Act of 1912, apparently to the Coal Company-lessee of the underlying coal and asphalt.

Nor does any one doubt the legislative power under the Act of 1912 to authorize and direct the Tribe to convey the surface of the said lands, subject to the right of way, by patent deed under prescribed regulations, or that the conveyance to the Coal Company was pursuant thereto and in accordance therewith.

The City of Wilburton and those claiming under it take the position, however, that the *right of vesture upon abandonment* as provided in Section 14 of the Act of 1906, ran with the land, and was contingent only upon abandonment of the right of way within the city limits of Wilburton, in which event it vested absolutely in the City. They argue, therefore, that the tribal patent under the Act of 1912 was "necessarily subject to the applicable provisions of such law for the final disposition of the right of way strip." The essence of this contention must therefore be that vesture upon abandonment under the second proviso of Section 14 overrides and renders invalid the tribal patent executed pursuant to the Act of 1912.

The reversionary and vesture provisions of Section 14 were here for consideration in United States v. Magnolia Petroleum Co., supra; United States v. Drumb, supra; Oklahoma City-Ada-Atoka Railway Co. v. City of Ada, 10 Cir., 182 F.2d 293; Seminole Nation v. White, 10 Cir., 224 F.2d 173; Chickasha Cotton Oil Co. v. Town of Maysville, 10 Cir., 249 F.2d 542; St. Louis-San Francisco R. Co. v. Town of Francis, 10 Cir., 249 F.2d 546. The City of Ada, the Town of Maysville and the Town of Francis all involved rights of way within the limits of a municipality. In each case we upheld the right of vesture in the municipality, either because the railroad had abandoned the right of way, as in the City of Ada case, or had failed to acquire fee title thereto as provided in Section 14. But none of the cases involved the surface of segregated coal lands specifically reserved from allotment under Sections 26(d) and 58 of the Act of July 1,

1902, and conveyed by tribal patents in pursuance of the Act of 1912. In none of these cases were we asked to construe the latter provisions of Section 14 to invalidate a tribal patent deed, executed pursuant to Congressional mandate, and otherwise valid.

■ The appellants seem to think that the validation of the tribal deed operates to repeal the reverter and vesture provisions of Section 14. But in our view, nothing in either act was intended to repeal the other. Both may be reconcilably construed to achieve the Congressional purpose to make final disposition of all tribal lands in the Indian Territory. Section 14 of the 1906 Act made provision for the reverter and vesture of trust and abandoned lands, including railroad rights of way, fee title to which was not acquired by the railroad in accordance with prescribed regulations. The subsequent 1912 Act was intended to provide for the disposition by sale of the surface of the segregated coal lands, which had been specifically reserved in the 1902 Act, and continued in Section 13 of the 1906 Act, and to which Section 14 of the latter Act therefore did not then apply.

■ There may be, however, some plausibility for the argument that in the event of abandonment of a railroad right of way across reserved segregated coal lands within municipal limits, prior to patent, title thereto vested in the municipality under Section 14; this, even though the abutting and servient ownership was in the Tribe, thus leaving no room for the rule against reversion of strips and gores to remote dedicators, as in Seminole Nation v. White, supra; and United States v. Magnolia Petroleum Co., supra. But we are not called upon to decide that question. In our case, prior to abandonment or inclusion of the litigated land within the municipal limits, the abutting and servient estate passed by patent deed as provided by law, and we agree with the trial court that in these circumstances, Section 14 of the Act of 1906 is inapplicable and inoperative.

■■ Finally and alternatively, the appellants take the position that in any event, there was no land in either lots 69 or 70 capable of conveyance by the deeds to the appellee, except the railroad right of way and the station grounds, and that these strips or gores passed with the conveyances recorded in Book 25, Page 521, and Book 32, Page 85. In other words, it is the contention of the appellants that the prior conveyances in the chain of title of the appellee executed by James McConnell during his lifetime, effectively conveyed all title he may have owned in the servient estate of the M. K. & T. right of way before the contingency of abandonment within the municipal limits. The appellants rely upon the universally accepted rule to the effect that in the absence of a manifest intent to the contrary, the conveyance of land abutting a public way by apt description or designation of it, carries with it title to the servient estate in such public way to the center thereof. Askins v. British-American Oil Producing Co., 201 Okl. 209, 203 P.2d 877; Annotation 49 A.L.R. 982.

The short and conclusive answer to the contention is that the appellants have no standing to challenge appellee's title to the strips of land in litigation. It is sufficient for our purposes that the appellee had color of title, and that it is paramount to the appellant's claim. As we have seen, the appellants have no litigable interest in the lands. If the appellee's title failed, they could not succeed. Smith v. Reneau, 188 Okl. 629, 112 P.2d 160; Keith v. Lawson, 195 Okl. 157, 155 P.2d 716; Robertson v. Knighten, 192 Okl. 678, 139 P.2d 601; United States v. Drumb, supra.

The judgment is affirmed.