46 CCPA

**SEALY, INCORPORATED, Appellant,**

**v.**

**SIMMONS COMPANY, Appellee.**

Patent Appeal No. 6420.

United States Court of Customs
and Patent Appeals.
April 22, 1959.

Gerrit P. Groen, Wm. Marshall Lee, and Byron, Hume, Groen & Clement, Chicago, Ill., for appellant.

Cyril A. Soans, William E. Anderson, and Soans, Anderson, Luedeka & Fitch, Chicago, Ill., for appellee.

Before WORLEY, Acting C. J., and RICH, MARTIN and JOHNSON (retired), JJ.

MARTIN, Judge.

This is an appeal from a decision of the Commissioner of Patents, acting through the Assistant Commissioner, reversing the Examiner of Interferences and dismissing an opposition to the application [1] for registration by the Simmons Company, appellee here, of the mark "Baby Posture," for mattresses. The appellant, Sealy, Incorporated, opposed the application on the ground of likelihood of confusion of prospective purchasers between "Baby Posture" and appellant's prior registered "Posturepedic" [2] and "Posture Pillow" [3] and the unregistered mark "Baby Posturepedic," each mark being used on mattresses. Opposer, on appeal to this court, solely urges that "Baby Posture" so resembles "Baby Posturepedic," when applied to applicant's goods, as to be likely to deceive purchasers.

The Assistant Commissioner in dismissing the opposition on the ground of absence of probability of deception of purchasers, found as follows:

"Considering the circumstances surrounding the purchase of mattresses in the usual retail outlets, and considering the highly suggestive nature of the word 'Posture' when applied to mattresses, and considering the manner of opposer's use and advertising of its 'Posturepedic' mark conjointly with 'Sealy', and considering opposer's use of 'Baby Posturepedic' merely to differentiate its 'Posturepedic' crib mattresses from its other sizes of 'posturepedic' mattresses, it is concluded that applicant's mark 'Baby Posture', when applied to mattresses, is not likely to create confusion, mistake or deception of purchasers."

On appeal, appellee urges that the decision below should be affirmed for the above mentioned reasons, and for the additional ground that Sealy, Incorporated, has failed to prove use of "Baby Posturepedic," by it or any affiliate, prior to the first use of "Baby Posture" by the Simmons Company.

The president of the opposer testified that his firm is primarily an executive office which licenses bedding manufacturers to use various trademarks and patents in association with the mattresses and other merchandise manufactured as "Sealy" products. He further testified that Sealy, Incorporated, exercises absolute control over both the engineering quality standards and the advertising practices of its licensees. A document, portions of which had been deleted, purporting to be a license agreement, was introduced in evidence and identified by this witness as showing the contractual relationship between Sealy, Incorporated, and its manufacturing affiliates. The same witness further averred, though Sealy, Incorporated was not a sales or-

1. Application Serial No. 666,603.

2. Reg. No. 569,105, issued Jan. 13, 1953.

3. Reg. No. 370,139, issued Aug. 15, 1939.

ganization, that in isolated cases it had acted as a transfer agent for its licensees to negotiate sales to national catalog houses, and that periodically floor samples were sold directly from opposer's markets in various cities to dealers, in order to eliminate old merchandise and prepare for new showings.

The aforesaid testimony was corroborated by the vice-president of Sealy's Ohio licensee, who stated that his organization manufactured and sold "Sealy" products, including "Sealy Baby Posturepedic" mattresses, in compliance with production specifications set by Sealy, Incorporated, and in accordance with a license of "the type" of that introduced in evidence.

■ There is no doubt that the use of "Baby Posturepedic" by opposer's licensees inures to the benefit of opposer and can be used to support these opposition proceedings. For although the exact terms of the license agreement are not shown by the record, it is clear from the testimony of Sealy's Ohio licensee that manufacture of "Baby Posturepedic" mattresses was under the control of, and in behalf of Sealy, Incorporated. In view of the above, it is clear that opposer has established the right to maintain this action. Wilson v. Delaunay, 245 F.2d 877, 44 CCPA 1019.

With regard to priority of use of the respective marks, the record shows use by the applicant of "Baby Posture" as a trademark for crib mattresses since May of 1954. Opposer's president, when asked when the mark "Baby Posturepedic" was first used, answered as follows:

"Well, as I told you, the Posturepedic mark was used in June, 1950. I think it was probably about two or three years later when we started to use Baby Posturepedic.

"Q64. Are you sure of that? A. I am not positive, no.

*    *    *    *    *    *

"Q67. Can you recall anything, Mr. Bergmann, [opposer's presi-

dent] which would help you remember when Baby Posturepedic was first used? A. No, honestly, I would have to consult the records, because my memory does not tie me back to those dates.

"Q68. You don't have any recollection as to an approximate date on which you used Baby Posturepedic? A. As I previously told you, I know from my own memory of sales back as early as 1953, and it could be the latter part of 1952."

The witness for Sealy's Ohio licensee, when queried as to his company's first use of "Baby Posturepedic" on mattresses, replied, "I can remember that we definitely started using it in 1952, possibly as early as 1951."

One cloth label and one photostatic copy of a label, each showing "Sealy" preceding the words "Baby Posturepedic," in different styles of type, are in evidence. Opposer's president, in testimony taken in June 1955, stated that he didn't know how long the cloth label had been used, but estimated that "it has been some little time, though. * * * My guess would be maybe a year." The representative of the licensee, when asked about the same label stated:

"That is the label we use on the Baby Posturepedic crib mattress.

"Q46. And do you have any idea off hand how long you have used this label? A. About three years."

Although the licensee was not questioned about the copy of the other label, the president of Sealy, Incorporated testified that it had been used "from the very beginning. I don't know what the exact date was." He further made a "guess" that it had been used "for three or four years."

The licensee further produced copies of invoices of sales of mattress products described as "Baby Posturepedic Crib(s)," several of which were dated in 1952 and 1953.

■ In view of the foregoing, we are of the opinion that appellant, by the in-

troduction of testimony of its president, a licensee representative, and the documentary evidence, has proven with "conviction of its accuracy and applicability * * *" that it and its licensee used "Baby Posturepedic" prior to May, 1954, the admitted date of first use of "Baby Posture" by appellee. This court has in similar situations stated that, although prior use must be established by a preponderance of the evidence, Etablissements Rene Beziers, Societe Anonyme v. Reid, Murdoch & Co., 48 F.2d 946, 18 CCPA 1340, such use can be proven by the testimony of only one witness. In Nettie Rosenstein, Inc. v. Princess Pat, Ltd., 220 F.2d 444, 448, 42 CCPA 806, which involved the question of the prior use of a mark by the opposer, this court stated that "there is no requirement of law that corroboration of the testimony of a witness in a trade-mark opposition case is essential to its probativeness * * *." B. R. Baker Company v. Lebow Brothers, 150 F.2d 580, 583, 32 CCPA 1206, cited by appellee, is distinguishable from the case at bar since in that case applicant's witness was endeavoring to establish an earlier date than that alleged in the application, by recalling from memory events which occurred some fourteen years prior to the time that the witness testified. However, even under those circumstances this court stated:

> "It is not contended by either party here that oral proof alone, even by one witness, if sufficiently probative, will not suffice in proving priority of ownership and use in a trade-mark interference proceeding. While the oral testimony of a single interested witness must necessarily have its weaknesses, we know of nothing in trade-mark law which justifies the rejection of such proof if it is sufficiently probative. However, such testimony is obviously strengthened by corroborative documentary evidence, and it should not be characterized by contradictions, inconsistencies, and indefiniteness but

should carry with it conviction of its accuracy and applicability. William S. Merrell Co. v. Anacin Co., 109 F. 2d 339, 27 C.C.P.A. Patents, 847. * * *"

Insofar as the use of the word "Baby" in conjunction with "Posturepedic" is concerned, the invoices of the Ohio licensee definitely place the date of such usage prior to appellee's first use of "Baby Posture." Furthermore, there is no reason for this court to deny probative value to these invoices, the label on which "Baby Posturepedic" is imprinted and the testimony of both opposer's president and the licensee representative to establish trademark usage of "Baby Posturepedic" by Sealy, Incorporated on crib mattresses prior to May, 1954. Moreover, this same evidence proves that the word "Baby" was not used by appellant and its licensee solely to distinguish between the various mattress sizes.

So we come now to the final issue in this case, i. e., whether "Baby Posturepedic" is confusingly similar to "Baby Posture." In resolving this question, as in all similar trademark cases, we must examine the marks in their entireties. Kitchen-Quip, Inc. v. Sunbeam Corp., 222 F.2d 265, 42 CCPA 869; Lauritzen & Co., Inc. v. Borden Co., 239 F.2d 405, 44 CCPA 720; Medicated Products Co. v. Alice Jewelry Co., 255 F.2d 408, 45 CCPA 966. Though appellant's labels include the house-mark "Sealy" in much the same manner that appellee's label includes "Simmons," this factor is not germane to the question of likelihood of confusion between the secondary trademarks. It is to be presumed that either "Baby Posturepedic" or "Baby Posture" may be used at any time without the respective house-marks. Hat Corp. of America v. John B. Stetson Co., 223 F.2d 485, 42 CCPA 1001; Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farms Dairy, Inc., 253 F.2d 431, 45 CCPA 842; Denney v. Elizabeth Arden Sales Corporation, 263 F.2d 347, 46 CCPA ——. This proposition is supported by the fact that

**938**

the mark shown in appellee's application does not include the word "Simmons."

█ While dissection of marks should not be indulged in, it is of course proper to consider separate portions thereof in order to determine the importance to be attached thereto. Sleepmaster Products Co., Inc. v. American Auto-Felt Corp., 241 F.2d 738, 44 CCPA 784, and cases cited therein. The Assistant Commissioner is correct in stating that the word "Posture" is suggestive when applied to mattresses, many third party registrations using this word and phonetic variations thereof in connection with mattresses having been introduced as further evidence of such connotation. Although it is true that the suggestiveness of the word "Posture" precludes this court from giving the opposer's mark the protection that a purely arbitrary mark could command, nevertheless, in this instance, the opposer, by appending the syllables "Pedic" to "Posture," has changed it into a different word and has given it a certain arbitrariness which deserves a greater degree of protection than the word "Posture" alone, or as used in the third party registrations of record.

██ Considering the marks in issue in their entireties, we note that the first four syllables are identical and that the only difference lies in the ultimate syllables "Pedic" found in opposer's trademark. Since both designations are applied to exactly the same merchandise, which merchandise is offered to the public through the same marketing channels, and since the mental reaction to the composite word marks is liable to be similar, a substantial doubt as to the likelihood of confusion of purchasers arises. In accord with the well established rule, such doubt must be resolved against the newcomer to the field, the Simmons Company, and in favor of the prior user, Sealy, Incorporated.

For these reasons, the Commissioner's decision is reversed.

Reversed.