Euen D. ELLIS, Appellee,

v.

UNION OIL COMPANY OF CALIFOR-
NIA, a corporation, Appellee,

v.

Gloria SAULS and Joann White, Co-Ad-
ministratrices with Will Annexed of the
Estate of Malinda Green, Deceased, et
al., Appellants.

No. 51913.

Supreme Court of Oklahoma.

Jan. 20, 1981.

Rehearing Denied June 22, 1981.

John R. Robertson, Jr., George, Kenan,
Robertson & Lindsey, Oklahoma City, John
Wimbish, Houston, Tex., for Continental Oil
Co.

Kelsey Hutchinson, Tulsa, for Texaco,
Inc.

Crowe, Dunlevy, Thweatt, Swinford,
Johnson & Burdick, Oklahoma City, for Glo-
ria Sauls and Joann White, Co-Administra-
trices of the Estate of Malinda Green, De-
ceased.

Leon C. Gavras, Tulsa, for Helmerich & Payne, Inc.; Maguire Oil Co.; Gary M. Maguire, Trustee under Trust dated 1/25/62 for the benefit of Gary McIlwaine Maguire, Jr.; Cary M. Maguire, Trustee under Trust dated 3/30/65 for the benefit of Melinda Amber Maguire; Cary M. Maguire, Trustee under Trust dated 12/28/72 for the benefit of Melinda Amber Maguire; Cary M. Maguire, Trustee under Trust dated 9/26/66 for the benefit of Ann Blaine Maguire; United Bank of Arizona, Trustee under Trust dated 12/15/76 for the benefit of Russell A. Maguire, Jr., a/k/a Russell Amber Maguire, and Barbara Newington.

Paul Hammons, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for American Natural Gas Production Co.

Ivester & Ivester, Sayre, for Kenneth L. Reed & Georgia R. Reed.

William J. Ivester, Ivester & Braddock, Altus, for E. W. Ivester & Eunice E. Ivester.

Newell E. Wright, Jr., Perryman, Smith & Wright, Cheyenne, for Katherine T. Newman, E. C. Hayhow, Joy W. Taylor, J. Joseph Taylor and James C. Taylor, Norvelle R. Deruy, Randall N. Deruy, Darlene Deruy & Elizabeth Deruy.

J. W. Brown, Dallas, Tex., for May Petroleum, Inc., a corporation, May Drilling Partnership 1973–2, a limited partnership; & First City National Bank of Houston, Texas, for the account of May Drilling Partnership 1973–2, a limited partnership.

Holland Meacham, Elk City, for Euen D. Ellis.

Watson, McKenzie & Moricoli, Oklahoma City, for Union Oil Co. of California.

IRWIN, Chief Justice:

The medial line of the North Fork of the Red River in Sec. 33, Township 10 North, Range 26 West, Beckham County, Oklahoma, has moved in a northerly and easterly direction since the original survey in 1874. This plat [1] shows the riparian lots (1–9) and the Left Bank (north side) and the Right Bank (south side) of the river as they existed in 1874. The plat also shows the medial line of the river as it existed in 1955, 1961, 1966, and 1976. It is to be noted that the 1955 medial line was north of the 1874 left bank in Lot 1, south of the right bank in Lots 2–3, and north of the left bank in Lot 4. This reflects very little change between the location of the banks of the river or the 1874 medial line and the 1955 medial line. It appears that the greatest changes occurred between 1955 and 1961, and between 1961 and 1966.

The primary issue presented to the trial court was whether such change (or changes) was by accretion or avulsion. The trial court found the overall change was by accretion and rendered judgment for appellees. Appellants appealed.

In so far as pertinent here [2], Euen D. Ellis, one of the appellees and principal plaintiff in the trial court, commenced quiet title proceedings and alleged, inter alia,

---

1. Sec. 33, Township 10 North, Range 26 West, Beckham County, Oklahoma.

2. There are several diverse interests in the property involved, such as surface estates, severed mineral interests and oil and gas leasehold estates. Generally speaking, appellees claim their interests through Ellis and the trial court quieted their title as prayed for. However, for brevity and clarification we will mention only those issues and interests which are necessary for disposition of this case.

ownership of Lots 6, 7, 8 and 9 and all the accretions thereto; that said lots contained 55.4 acres under the original survey and were bounded on the north by the North Fork of the Red River; that such river moved north by the process of accretion adding an additional 174.75 acres [3] of accreted land to his riparian lots on the south banks of the river; and that by such accretion he was now the owner of 230.18 acres extending north of his lots as originally surveyed. The appellees who claim their interest through Ellis, as oil and gas lessees, etc., supported Ellis's allegations that accretion occurred.

Appellants are the record owners (including oil and gas lessees) of all the property located north of the medial line as reflected by the 1874 survey *except* the minerals in Lots 1, 2 and 3 which are owned by the U. S. Government (U.S.A.). The U.S.A. was not joined as a party defendant, was not a party to this litigation, and neither party suggests the trial court had the power to compel the U.S.A. to be a party.[4]

The decisive issue is whether the U.S.A. is an indispensable party to the complete determination of this case. The trial court and the Court of Appeals determined that the U.S.A. was not an indispensable party. We hold that it is an indispensable party; grant certiorari; vacate the opinion of the Court of Appeals; and reverse the judgment of the trial court.

Before proceeding to show why the U.S.A. is an indispensable party, we should first point out that this is not the first time this court has considered this precise issue in this case and decided it was an indispensable party. While this case was pending in the trial court, an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition was timely filed in this court, styled *Continental Oil Company, a corporation, and Texaco, Inc., a corporation,*[5] *v. The District Court of The Second Judicial District, Beckham County, Oklahoma, and the Honorable Charles M. Wilson Judge Thereof,* Oklahoma Supreme Court Case No. 51,-722. In that proceeding petitioners alleged that the U.S.A. was an indispensable party; that the trial court had no jurisdiction over the U.S.A.; that the U. S. District Court for the Western District of Oklahoma was the only jurisdiction in which the cause could be finally litigated; and that the trial court should be prohibited from further proceeding. Although petitioners requested a stay of the trial court proceedings pending our disposition of their petition for prohibition, this court did not act upon the request and issued no orders in reference to petitioners' application to stay the district court proceedings.

The trial court overruled appellants' application that its proceedings be continued and stayed pending this court's disposition of Cause No. 51,722. The cause proceeded to trial while the original application was pending in this court and on January 7, 1978, the trial court judgment was rendered.

This court was not advised that the trial court had proceeded in the cause and on January 25, 1978 the following order was issued by this court:

## ORDER

"The Court assumes original jurisdiction and finds that the United States of America is an indispensable party to the complete determination of this case, but that the United States of America cannot be joined in the State Court as a party

---

3. In effect, Ellis sought to establish that he had acquired title by accretion to all the property between the medial line of the river as it existed in 1874 and the 1976 medial line *except* the mineral interest under Lots 1–3 which were owned by the U. S. Government.

4. See Title 28 U.S.C. § 2409a and Title 28 U.S.C. § 1346(f), and *California v. Arizona,* 440 U.S. 59, 99 S.Ct. 919, 59 L.Ed.2d 144 (1979).

5. Continental Oil Company and Texaco, having oil and gas leases covering mineral interests at issue, were proper parties to bring the original proceedings.

defendant without its consent. Further, that a case involving the same controversy has been filed in the United States District Court for the Western District of Oklahoma (CIV–77–1056–T) by Euen D. Ellis against the United States of America, and that the Petitioners herein have either joined or intend to ask to be made parties in that case in order that all issues concerning all of the interested parties can be determined at one time.

Therefore, in the interest of having all of the issues concerning all of the necessary parties settled in one lawsuit, we direct that the Honorable Charles M. Wilson desist and refrain from further proceedings in Case No. C–77–46 until the case of Euen D. Ellis v. The United States of America, Case No. CIV–77–1056–T, in the United States District Court for the Western District of Oklahoma, has been heard, or until further order of this Court.

DONE BY THE SUPREME COURT IN CONFERENCE this 25th day of January, 1978."

Thereafter, in April, 1978 pursuant to motions filed by appellees, this court vacated its order of January 25, 1978 and dismissed Case No. 51,722 because the district court had proceeded to trial and rendered its decision and the issues presented in the original proceedings had become moot.

Query: Why is the U.S.A. an indispensable party to a complete determination of this case?

In *Nilsen v. Tenneco Oil Co.*, Okl., 614 P.2d 36 (1980) we held that mineral estates, whether severed or not, are like surface estates, both are subject to loss or gain by the process of accretion. Under our holding in *Nilsen*, the minerals under Lots 1, 2 and 3, which are owned by the U.S.A. would accrete to Ellis, the owner of the minerals under Lots 6 thru 9 if accretion occurred in a northerly direction. However, that issue has never been litigated or decided because the U.S.A. was not a party in the state court proceedings. That issue is pending in the federal court.

In *Willett v. Miller*, 176 Okl. 278, 55 P.2d 90 (1936) we held:

"Where a non-navigable stream is the boundary line between riparian owners, and by a sudden freshet or flood a considerable area of land belonging to one owner is washed away by the current of the river and at the same time land is formed on the opposite bank of the stream, in approximately the same area, the doctrine of avulsion applies, and there is no change in the boundary line. It remains at the place where the middle of the main channel of the stream was before the freshet or flood."

▮ The North Fork of the Red River is a non-navigable river and ownership on each side extends to the medial line. The plat discloses there were material changes in the medial lines between the years 1955 and 1976. If a change in the medial lines resulted from avulsion, such change would not affect the boundary line between or ownership in the properties because they would remain the same during the period covered by the avulsion.

For clarification: the plat discloses that no part of the 1955 medial line lies north of Lots 1 thru 4. Assuming arguendo that the change in the medial line between 1874 and the 1955 survey was by accretion, the boundary line between the Ellis and the U.S.A. properties would be the same as the 1955 medial line and the U.S.A. would own all the minerals that are between the 1955 medial line and the north line of Lots 1 thru 3, and Ellis would own all the minerals south of the 1955 medial line, i. e., all the minerals between the 1955 medial line and the south line of Lots 6 thru 9. If the federal court should determine that the change in the medial line of the river between 1955 and 1961, as shown by the plat, was by avulsion and not accretion, there would be no change in the boundary line as it would be the same as the 1955 medial line, and there would be no change in ownership. Neither Ellis nor the U.S.A. would gain or lose any mineral interest by the change in the medial line by the process of avulsion. Subsequent accretion would inure to the benefit of the owner's riparian to

the 1961 medial line and under no theory of law would Ellis be entitled to any additional minerals by reason of accretion to the north. Ellis would have no riparian rights to the accretion.

The mineral interest of the U.S.A. lay between that of appellants' and Ellis'. Its interest was contiguous to that of the appellants' on the north and riparian to Ellis' on the south. Ellis' interest was neither riparian nor contiguous to that of appellants'. Riparian accretions occur where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, either by accumulation of material or by the recession of the stream. 60 O.S. 1971, § 335. Ellis sought to impose the doctrine of accretion against appellants' interest which was not riparian to his own. This he cannot do nor can he lay his claim by extinguishing or displacing the interest of the U.S.A. Ellis must prevail, if at all, upon the strength of his own title, and not upon the ownership of the U.S.A. *Robertson v. Knighten*, 192 Okl. 678, 139 P.2d 601 (1943). Although the U.S.A. might be able to prove that accretion occurred and it may be entitled to some accretion rights to the north of Lots 1, 2, and 3, Ellis has no justiciable claim to such rights until it is established that he acquired the mineral interest of the U.S.A. Since Ellis could not invoke the doctrine of accretion against appellants' interests without affecting or clouding the interest of the U.S.A., the U.S.A. is an indispensable party to a complete determination of this case.

This suit in equity could not be maintained without the joinder of an indispensable party. See *California v. Arizona*, Footnote 4. Since the U.S.A. was not joined and could not be compelled to join as a party in the state court litigation and the trial court did not have the power to affect the mineral interest of the U.S.A., an indispensable party, the district court judgment must be reversed.

We re-affirm our order of January 25, 1978, in which we held that the U.S.A. was an indispensable party to a complete determination of this case.

Certiorari granted; Court of Appeals decision vacated; and judgment of the trial court reversed.

BARNES, V.C.J., and LAVENDER, SIMMS and OPALA, JJ., concur.

HODGES, DOOLIN and HARGRAVE, JJ., concur specially.

HARGRAVE, Justice, concurring specially:

I concur in the conclusion that the U. S. Government is an indispensable party in this instance. However, insofar as this opinion constitutes a reaffirmance of the law of accretion as applied to severed mineral estates embodied in *Nilsen v. Tenneco*, 614 P.2d 36 (1980), my views are ably discussed in the concurring in part, dissenting in part opinion of Mr. Justice Doolin in that case.

I am authorized to state that HODGES and DOOLIN, JJ., concur in the views expressed herein.