KENNEDY *v.* KENNEDY.

No. 11433. NOVEMBER 25, 1936.

*John P. Rabun* and *M. W. Eason,* for plaintiff in error.
*W. T. Burkhalter,* contra.

ATKINSON, Justice. In 1897 or 1898 J. J. Kennedy made an oral gift of the one acre of land in question to the trustees of the Fair Haven School, "to be held by said trustees so long as said land is used for school purposes." The acre was marked off, and a building was erected thereon. Subsequently J. J. Kennedy conveyed to Eli P. Kennedy, by general warranty deed, dated December 2, 1905, for a consideration of $5000, 539-1/2 acres of land, inclusive of the said one acre. At the time this warranty deed was made the trustees were in possession of said one-acre school lot. On January 1, 1917, J. J. Kennedy made a quitclaim deed to J. C. Kennedy et al., as trustees of Fair Haven School, covering the lot in question, and reciting that the lot was to be held "so long as the same is used for school purposes," being the same condition as was embodied in the oral gift from J. J. Kennedy to said trustees in 1897 or 1898. Some weeks before the filing of this action in ejectment, the Fair Haven School was removed from the land in dispute to a location about two miles therefrom. J. C. Kennedy, the plaintiff, successor to the title held by Eli P. Kennedy, claimed the property as having been abandoned by the trustees of the Fair Haven School when the school was moved to the new location. The trustees disputed the claim of J. C. Kennedy, because the school authorities were in possession of said lot at the time Eli P. Kennedy purchased all the land of J. J. Kennedy, and because Eli P. Kennedy had notice of their adverse claim. J. C. Kennedy brought this action in ejectment against H. B. Scott, J. A. Smith, W. S. Moseley, I. L.

Anderson, and T. M. Rogers, as trustees of said Fair Haven School, for recovery of said one acre of land, and J. J. Kennedy became a party defendant by intervention. At the time J. J. Kennedy orally gave the land for school purposes to the patrons of the school Eli P. Kennedy was one of the patrons, and knew all about the transaction. By consent the case was tried before the judge without a jury. He held that the deed executed by J. J. Kennedy to the trustees conveyed a perfect title to them, with a possibility of reversion to the grantor upon the happening of a condition subsequent; and that in view of the admission that the site had been abandoned for school purposes, the reversion took place, and the school trustees had no further interest in the property.

The judge then decided as follows: "Does the title revert to J. J. Kennedy the original grantor, the intervenor herein, or to the plaintiff, who holds under the grantee of J. J. Kennedy, to the tract of land entirely surrounding this schoolhouse tract of one acre? When J. J. Kennedy conveyed to E. P. Kennedy, predecessor in title of plaintiff, a large tract of land, which entirely surrounded, or nearly so, this schoolhouse tract, he made no reference in his deed to the school property; but since the defendants were in possession of it, reference was unnecessary as their possession was notice to the world that it was theirs. J. J. Kennedy then owned no estate in the schoolhouse tract, his only interest being a possibility of reversion upon the happening of something that might never happen. *This interest or possibility of an interest could not be considered to be an estate or anything subject to sale.* [Italics ours.] It is unreasonable to believe that E. P. Kennedy at the time of his purchase thought that he was buying this unexpected and unlikely interest that could be caused by the abandonment of this school site, or that J. J. Kennedy intended to and did sell an interest that he did not then own. If it was not in the mind of either the seller or the buyer that the schoolhouse site was sold, then of course the buyer did not buy it. And since J. J. Kennedy did not then own anything that he could sell, it is the opinion of this court that no title to the said schoolhouse tract of land, containing one acre, passed from J. J. Kennedy to E. P. Kennedy. Since the title has reverted from the defendants, and it not appearing that E. P. Kennedy acquired any title that he

could transmit to the plaintiff, it seems certain that the title to this schoolhouse property is now vested in J. J. Kennedy; and the court so holds. It is the judgment of the court that the land in dispute, including the improvements thereon, is the property of J. J. Kennedy," etc. To this judgment J. C. Kennedy excepted. The trustees of the school did not except. Three questions arise: (1) In view of the facts, what power did J. J. Kennedy have to sell the reversion in the one acre given to the school trustees? (2) If J. J. Kennedy had no salable interest in the one acre, but made a warranty deed covering the one acre, did the title to the one acre accrue to the grantee whenever it become vested in the grantor? (3) Where a deed specifically covers certain property, can a part be excluded therefrom by oral evidence without proceedings for reformation of the deed?

■ The Code of 1933, § 96-102, declares: "A bare contingency or possibility may not be the subject of sale, unless there shall exist a present right in the person selling to a future benefit; so a contract for the sale of goods to be delivered at a future day, where both parties are aware that the seller himself expects to purchase to fulfill his contract, and no skill, labor or expense enters into the consideration, but the same is a pure speculation upon chances, is contrary to the policy of the law, and may be enforced by neither party." The first clause in this section is the only one necessary to consider for the decision of this case. This provision of the Code originated principally from the purpose to protect thriftless heirs against their own improvidence. In Read v. Mosby, 5 L. R. A. 122, decided by Judge Lurton, afterwards a member of the Supreme Court of the United States, and at the time Judge of the Supreme Court of Tennessee, it was held: "A conveyance, by an insolvent heir presumptive, to his wife, of his expectancy in the estate of his father, then living, upon no other consideration than love and affection, is invalid, in equity, as against his creditors whose debts were in existence either at the date of the deed or at the death of his father. . . Speaking of the effect of such a grant, Prof. Washburn, in his learned work upon the Law of Real Property, says: 'But every right is not the subject of a grant, though it relates to land, or an interest therein. Thus, a bare possibility of an interest which is uncertain is not grantable, though a possibility, coupled with a present interest,

may be granted. It has accordingly been held that a grant by an heir apparent of an interest in his ancestor's estate, so long as his ancestor is living, conveys nothing, and is inoperative. But when an heir apparent, who was indebted to another, assigned his interest in his ancestor's estate, with a power of attorney to make all deeds, etc., necessary to receive the proceeds, it was held to give him such an interest that equity protected it against the claims of a creditor of the heir who attached the estate at the ancestor's death. . . *It must be an interest in the land existing in possession, reversion, remainder, by executory devise, or contingent remainder.'* [Italics ours.] 3 Washb. Real Prop. bottom p. 636. . . There is much conflict in the authorities as to the operation of covenants of warranty in estopping the grantor under such a deed, and some cases have gone to the extent of holding that, by operation of such covenants, the estate would pass when acquired. . . In most of these cases have concurred deceit and illusion on other persons not privy to the fraudulent agreement. The father, ancestor, or relation, from whom was the expectation of the estate, has been kept in the dark. The heir or expectant has been kept from disclosing his circumstances, and resorting to them for advice, which might have tended to his relief and also reformation. This misleads the ancestor, who has been seduced to leave his estate, not to his heir or family, but to a set of artful persons, who have divided the spoil beforehand."

In 2 Coke on Littleton, 264b, 265a, 265b, § 446, Butler and Hardgraves Notes, is the following: "For no right passeth by a release, but the right which the releasor hath at the time of the release made. For if there be father and sonne, and the father be disseised, and the sonne (living his father) releaseth by his deed to disseisor all the right which he hath or may have in the same tenements without clause of warrantie; and after the father dieth, the sonne may lawfully enter upon the possession of the disseisor, for that he had no right to the land in his father's life, but the right descended to him after the release made by the death of his father." There is a comment note to the above, that a man may have a present right, though it can not take effect in possession, but in future: "As hee that hath a right to a reversion or remainder and such a right hee that hath it may presently release. . . And so note a diversity between a release,

a feoffment and a warrantie; a release in that case is void; a feoffment is good against the feoffer, but not against his heirs; a warrantie is good both against himself and his heirs." This quotation is partly contained in the decision of Dart *v*. Dart, 7 Conn. 250, 256, where the Connecticut Supreme Court held that there would be an estoppel as against the holder of a right if there had been a warranty, and that the absence of a warranty prevented the transmission of the estate in expectancy. The Supreme Court of Massachusetts held, in Trull *v*. Eastman, 3 Metcalf, 121 (37 Am. D. 126): "A release· by an heir apparent of his estate in expectancy, with a covenant that neither he, nor those claiming under him, will ever claim any right in the same, is, if made fairly and with the consent of the ancestor, a bar to the releasor's claim thereto, by descent or devise, after his ancestor's death. Such covenant runs with the land, and protects the heirs and assigns of the covenantee. A release of 'all the right, title, or interest,' which the releasor 'has, or may have, in or unto the estate of his father, whether the same may fall to him by will or heirship,' includes future rights to be acquired by the releasor; and a covenant never to make claim to 'the premises,' is a covenant never to make claim to the estate of the father."

This court held, in *Dailey* v. *Springfield,* 144 *Ga*. 395 (87 S. E. 479, Ann. Cas. 1917D, 943): "A deed which on its face purports to convey a bare contingency or possibility, and in which there is nothing to show a *present right* [italics ours] in the vendor to sell a future benefit, is void. . . A covenant of warranty in such deed will not inure to the benefit of the vendee, or his heirs, so as to subject after-acquired property of the vendor to such covenant. . . Accordingly, where a vendor for a named consideration conveyed to a vendee 'all the present rights in or title to all interests that' the vendor 'may become possessed of either by inheritance or by deed from' the mother of the vendor, in certain city lots which the mother 'now owns' in a certain city, and any interest he 'may in the future become possessed of in any other city property, . . either by deed or inheritance from' the mother, this was an attempt to convey a mere naked possibility without any present interest, and was void. . . Where in such case an action was brought by the widow of the vendee, who was his sole heir, in her own right (there being no debts

against the estate), to recover an interest in certain realty belonging to and the proceeds of certain other property derived from the mother's estate, after her death, a demurrer to such petition was properly sustained." Mr. Justice Hill, referring to the Code section cited above, said: "There is no contention that B. W. Springfield had a present right to sell a future benefit at the date of the deed. Our own court seems not to have passed upon the exact question here raised, so far as we have been able to find. But a number of outside jurisdictions have decided the question. In Hoyt v. Hoyt, 61 Vt. 413, 416 (18 Atl. 313), it is said: 'At common law agreements for the sale of expectancies are generally held to be pernicious and void, for the reason that they offer temptations to heirs to anticipate the enjoyment of property by making disadvantageous bargains, which tend to their harm and to involve the name and character of the family.'" In that case the contention of the plaintiff in error was as follows: "It is contended that the deed contained a covenant of warranty as to the interest conveyed, and that the grantor is estopped from denying its legality. But the interest he attempted to convey, as already shown, was nothing. The deed only purported to convey and to warrant his interest in his mother's estate; and as we have seen that he had no interest in his mother's estate to convey, the rule contended for did not apply."

In *Todd* v. *Williford,* 169 *Ga.* 543, 549 (150 S. E. 912), in discussing the Code section regarding the sale of a bare contingency or possibility, Mr. Justice Gilbert said: "The provision that 'a bare contingency or possibility can not be the subject of sale, unless there exists a present right in the person selling, to a future benefit,' does not apply to the sale of an interest in real estate where there is a contingent interest, the contingency being as to the event and not as to the person, as in this case. Where one executes a warranty deed to another, purporting to convey title to property when the grantor owns no interest in the property described in the conveyance, but subsequently does acquire an interest, the subsequently acquired interest immediately inures to the benefit of the grantee in his deed. Whether or not Narcissa J. Todd owned any salable interest in the land described in her deed to Levanah Pearl, on the death of the latter, whatever interest, if any, she subsequently acquired immediately inured to the

heirs of Levanah Pearl, and not to Narcissa J. It follows that the deed from Narcissa J. to her son, J. N. Todd, was ineffectual to convey any title possessed by Narcissa J. Todd either before or after the execution of the latter's deed to her daughter, Levanah Pearl." J. J. Kennedy gave the one acre of land to the trustees during the time it was used for school purposes, thus creating a conditional limitation. *Lawson* v. *Georgia Southern & Florida Railway Co.,* 142 *Ga.* 14 (82 S. E. 233). Unless J. J. Kennedy had disposed of his right in the property, he could have relieved the property conveyed to the school trustees of the limitation. He did have a *present* right in a future contingency, and therefore he was not attempting to sell a bare contingency or possibility when he made the deed to Eli P. Kennedy.

■ The first division of this opinion answers the second question. J. J. Kennedy had a right to make the warranty deed in 1905 to Eli P. Kennedy, conveying whatever interest he had in all of the property described in the deed to the grantee. Upon making this warranty deed all interest in the one acre of land, included in the realty described, was conveyed to the grantee; and it is unnecessary to multiply authorities to the effect that "When the grantor owns no interest in the property described in the conveyance, but subsequently does acquire an interest, the subsequently acquired interest immediately inures to the benefit of the grantee in his deed." *Todd* v. *Williford,* supra.

■ It is admitted that the warranty deed made in consideration of $5000, from J. J. Kennedy to Eli P. Kennedy, conveyed 539-1/2 acres, including the one acre in controversy. At that time the school authorities held the one acre subject to the limitation before stated, and they were operating a school thereon. The trial court said that manifestly it was not the intention of J. J. Kennedy to convey the one acre to Eli P. Kennedy under the circumstances, even though the deed conveyed the one acre. In the first place, it would be a mere guess to say that Eli P. Kennedy bought the property constituting a large acreage, and intended that out of the whole tract one acre should revert to J. J. Kennedy if the school authorities abandoned the property for school purposes. Further, it would be an unsupported conjecture to say that J. J. Kennedy expected to reclaim the one acre out of the entire tract which he had sold, in the event the interest

of the school authorities terminated. However, it is not necessary to make this conjecture, for the reason that when a deed by its terms admittedly conveys certain property, a part of the property may not be excluded from the deed on parol evidence that such was not the intention of the maker. This case does not involve any attempt to reform a deed, or to explain an ambiguity. In *Groover* v. *Simmons*, 152 *Ga.* 423 (2) (110 S. E. 179), this court held: "Allegations of the defendant's answer, setting up an understanding at variance with the terms of the deed executed by the plaintiff to the defendant, and a prayer based on such allegations, should have been stricken on demurrer." Under the record the court erred in not decreeing the one acre to be the property of J. C. Kennedy, holding as successor in title to Eli P. Kennedy.

*Judgment reversed. All the Justices concur.*