HALES et al. v. LEE et al.

No. 32327.    Sept. 9, 1947.

*184 P. 2d 451.*

J. E. Williams, of Ardmore, and Warren B. Kice, of Ada, for plaintiffs in error.

McArthur & Orton, of Ada, for defendants in error.

PER CURIAM. This is an action to quiet title to a tract of land in Pontotoc county, brought by C. E. Lee, H. J. Kroninger, Claude E. Carpenter, and Willie J. Carpenter, owners in possession under and by virtue of a resale tax deed, against the defendants, W. T. Hales, Jr., and others, grantees in mineral deeds made by the former owner prior to the resale. Trial was had to the court without a jury and judgment was rendered for plaintiffs. Certain defendants appealed from the judgment and those defendants who refused to join in the appeal as plaintiffs in error were included as defendants in error.

The facts are undisputed. On May 13, 1941, the date of the resale, and for a long time prior thereto, the land, 190 acres, in one body, was owned by John D. Gann. Claude E. Carpenter, a son-in-law of Gann, was in possession as tenant of Gann. In 1937 or 1938, Gann offered to sell the land to Carpenter for an amount necessary to pay off a mortgage on the land, but Carpenter was unable to raise the money. The mortgage was foreclosed but the land was never sold to satisfy the mortgage debt. In 1939 Carpenter's name was shown upon the county treasurer's records as the owner of the land, but how this happened is not disclosed. In the resale notice Carpenter is shown as owner. The mineral deeds by Gann, under which defendants claim, antedate the mortgage above mentioned.

Kroninger, who purchased the land at the resale, was employed in Ada as superintendent of an oil company. He was a close friend of C. E. Lee, another son-in-law of Gann, but was not acquainted with either Gann or Carpenter. He first saw the land a short time before the resale, when he was hunting on Lee's place which was nearby. At that time Lee advised him that it would be sold for taxes. Kroninger testified that he was looking for a place to raise cattle, and liked the place better than any which he had previously looked at. He denied that Lee induced or persuaded him to buy the land, or that in bidding it in at the resale he acted as agent for any one. Lee told him that the land belonged to his father-in-law. Mrs. Lee accompanied him when he attended the sale, because he was not familiar with the description of the land. He paid $1,800 for the land, making the payment out of his own funds, by check.

On May 23, 1941, ten days after the resale, Gann and his wife executed and delivered a quitclaim deed to Kroninger. No consideration was paid for this deed. On the same day Kroninger, for a consideration of $1,800 deeded the land to Lee, and Lee conveyed a one-fourth interest in the minerals to Kroninger. On August 4, 1943, Lee, for a consideration of $1,800, conveyed the surface and one-

half of the minerals to Claude E. and Willie J .Carpenter. Gann, a witness for the defendants, testified that he had been unable to raise the money to pay the taxes against the land, or to redeem it because of the judgment against him in the foreclosure proceeding, and that he thought Kroninger entitled to the quitclaim because he bought the land at resale. He stated that when he gave the quitclaim he did not know that Kroninger was selling to Lee. Kroninger testified that he sold to Lee because his physician ordered him to California on account of his health, and that he left for California shortly thereafter.

Defendants first contend that this action having been commenced on June 14, 1944, more than two years after the date of the resale deed, it was barred by the statute of limitation, 12 O.S. 1941 §93, subd. 3. Although no oil or gas had ever been produced from the land, they say that Gann, having prior to the date of his deed to Kroninger severed the mineral estate from the surface, could not deliver title or possession of the minerals to Kroninger, so that as to the mineral interests vested in defendants the action is for possession, and comes within the rule announced in Lane v. Bass, 193 Okla. 682, 146 P. 2d 563. This argument overlooks the fact that by the resale deed Kroninger took title to both the surface and mineral estate. Secrest v. Williams, 185 Okla. 449, 94 P. 2d 252. Therefore, the possession of plaintiffs under the resale deed included possession of the mineral interests formerly owned by defendants, of which they were divested by the resale.

Defendants next contend that plaintiffs were guilty of laches, in that they delayed the bringing of this action until after the mortgagee hereinbefore mentioned had, in an action brought by him against the county treasurer, Gann, and the Carpenters, recovered the excess purchase money held by the treasurer after deducting the taxes due, as provided by 68 O.S. 1941, §432f, and applied it to the satisfaction of his judgment. Defendants assert that this delay permitted a junior lienholder to come in and get the overplus of the sale price, to the prejudice of defendants, and that such lack of diligence on the part of plaintiffs bars the granting of equitable relief to them.

This argument seeks to place upon the plaintiffs the responsibility for the almost complete lack of diligence in protecting their rights displayed by defendants. If defendants were entitled to share in the overplus, a question unnecessary here to determine, no duty rested upon the tax deed holder in possession to notify them, by action or otherwise, that he had paid more than the amount of the taxes for the land. The resale deed, which showed the amount paid for the land by Kroninger, was recorded May 19, 1941. The action by the mortgagee was filed June 15, 1941. Defendants did nothing. The result illustrates the truth of the maxim "Equity aids the vigilant."

We find nothing in Nickel v. Janda, 115 Okla. 207, 242 P. 264, or Luschen v. Stanton, 192 Okla. 454, 137 P. 2d 567, both cited by defendants, which support this contention.

Defendants next contend that a fiduciary relation existed between Carpenter and his father-in-law, Gann; that Carpenter had prior to the tax sale such an interest in the land as would preclude him from taking a tax deed, and that the taking of the tax deed by Kroninger, and the subsequent conveyances which resulted in the vesting of title in Carpenter, was pursuant to a scheme or plan to enable Carpenter to acquire indirectly what he was prohibited, by the rule announced in Bereman v. Grant, 195 Okla. 330, 157 P. 2d 743, and other decisions of this court, from doing directly.

Both Gann and Carpenter testified that Carpenter occupied the land as tenant, and that he paid crop rent therefor. Carpenter testified that after Lee

bought the land he paid crop rent to Lee. Neither Gann nor Carpenter lived on the land, and there is no evidence that Carpenter transacted any business for Gann, or at any time paid or agreed to pay taxes thereon. That Gan offered at one time to sell Carpenter the land, and that in some unexplained manner Carpenter's name was placed upon the tax rolls as owner, falls far short of establishing a fiduciary relationship between him and Gann, or the existence of any duty on the part of Carpenter to pay the taxes.

Nor does the evidence justify the conclusion that any scheme or plan existed to procure the tax title and vest it in Carpenter. Defendants infer the existence of such a plan from the fact that Kroninger was a friend of Lee, who was a brother-in-law of Carpenter. But the testimony of Kroninger, Carpenter, and Gann to the contrary was direct, positive, and uncontradicted. Lee was not called as a witness. The trial court saw the witnesses, and heard them testify, and evidently concluded that they were telling the truth, and his conclusion was not clearly against the weight of the evidence.

Defendants next assert that at the resale it was the duty of the county treasurer to offer the land for sale in subdivisions, and to sell it to the party offering to pay the amount of taxes due for the smallest portion of the land, as provided in 68 O.S. 1941, §384. That statute is a part of the law governing original sales, and has no application to resales. On resales, it is the duty of the county treasurer to offer the whole tract to the highest bidder for cash, and if no one bids the required amount therefor the tract is bought in by the county treasurer. 68 O.S. 1941 §432d. If the land is sold to an individual purchaser for more than the taxes, penalties, interest and costs due thereon the excess is held by the county treasurer for a period of two years during which time it may be withdrawn by the former owner. 68 O.S. 1941, §432f.

The conditions which obtain at the time the property is offered at resale are essentially different from the conditions existing at the time of the original sale. At the original sale the county treasurer for the first time attempts to collect the taxes by the sale of the property. The Legislature, by enacting section 384, sought to alleviate the harsh remedy, and to enable the county treasurer to collect the tax with as little detriment to the owner as possible. Its object was to enable the property owner to pay his taxes, and if possible retain a portion of his property.

On the other hand, at resale, the county has already bid in the property because at the original sale no one would bid the amount of the delinquent taxes for the whole tract. The owner having failed to redeem within the two years waiting period, the county treasurer is under no obligation to make a further effort to prevent any loss to him. The resale is a last effort on the part of the county to obtain the delinquent taxes by again offering the land for sale as a whole. Of this sale the owner is given due notice. There is no reason why, at such resale, any further effort should be made to protect him. If his land sells for more than the delinquent taxes he is entitled to the excess.

Defendants' last contention is that the assessment of the entire 190 acres as one tract rendered the assessment and sale void, citing Frazier v. Prince, 8 Okla. 253, 58 Okla. 751, and Emery v. Stansbury, 173 Okla. 478, 49 P. 2d 155. These decisions were modified by the later decisions in Board of County Commissioners of Tulsa County v. Sutton, 185 Okla. 665, 95 P.2d 648, Hefner v. Cravens, 189 Okla. 558, 118 P. 2d 652, and Westerheide v. Wilcox, 190 Okla. 382, 124 P. 2d 409. In these cases we held that a tract of land consisting of several legal subdivisions, which were contiguous, and in the same section, could properly be assessed for taxation as one tract. In the instant case, the 190-acre tract was a compact body of

land in one section, the legal subdivisions being contiguous. Gann testified that it had always been returned and assessed as a single tract during his ownership thereof. Such assessment did not render the sale invalid. Defendants assert that the ownership of the land was not the same because Gann had conveyed mineral interests under the various subdivisions. But prior to production the ownership of the mineral interests, in so far as assessment for taxes was concerned, was immaterial, since for taxing purposes they were included in the assessment of the land whether separately owned or not. Secrest v. Williams, supra.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, CORN, and LUTTRELL, JJ., concur.

