INDEPENDENT SCHOOL DISTRICT NO. 8
OF COMANCHE COUNTY, Okla-
homa, Plaintiff in Error,

v.

T. C. HUNTER and Pearl A. Hunter,
Defendants in Error.

No. 41099.

Supreme Court of Oklahoma.

March 8, 1966.

Rehearing Denied May 17, 1966.

Nicklas & Parrish, Lawton, for plaintiff in error.

Brock & Hensley, Lawton, for defendants in error.

BLACKBIRD, Justice.

The principal question in the action out of which this appeal arose was whether the plaintiff in error, or the defendants in error had title to, and the right to possession. of, a certain one acre of a quarter section of land, which is now in, or near, the City of Lawton.

Apparently, at the time a patent was issued by the United States to Don W. Scott, covering said quarter section, in 1906, the subject acre in the southeast corner of said tract was then being used as the site for a school named the "Scott School" to serve School District No. 41, which was organized in 1902.

On March 30, 1906, Don W. Scott and his wife conveyed the quarter section to one W. T. Andrews by a deed which contained in its "granting" portion, after the legal description of the quarter section, the following:

"* * * saving and excepting whatever *legal right and interest* is now held by school district number 41 in and to the square acre in the southeast corner of said tract, on which is now located the 'Scott School House'." (Emphasis added).

Defendants in error, Mr. and Mrs. Hunter, obtained their claimed title to the quarter section by a deed executed and delivered to them in early 1946, by the above mentioned Andrews and his wife. This deed contained no mention of School District No. 41, of the one acre then being used as the school house site, or any words whatsoever to create any doubt but that it purported to be a conveyance of the full fee simple title to the entire quarter section.

In 1959, when the City of Lawton had undergone a tremendous growth in a northwesterly direction in and around the area of this quarter section, and its Country Club Estates addition was established, or was being inhabited, and the need for additional school facilities in that area was beginning to be realized, and proposed sites for a new junior-senior high school (to be given the name of "Eisenhower") was being considered, School District No. 41, which we will hereafter refer to as the "Scott School District" was annexed to School District No. 8, which will hereinafter be referred to

as the "Lawton School District." Thereafter, the Scott School was operated by the Lawton School Board for another year (by adding one teacher, and bussing its seventh and eighth grade students to another Lawton school). After that, no public school was held in the Scott School facilities, but the Lawton School Board rented them to a private school for one nine-month period. Since that time, said Board has rented the facilities to a Baptist Church for use as a mission, at a reduced monthly rental.

In 1960, the Lawton School District instituted District Court Cause No. 19397, to quiet its title to the premises involved herein against both the Hunters and the Scotts, and the latter's unknown heirs, executors, etc. However, before judgment was entered for the District that same year, the Hunters were dismissed from the action.

Thereafter, in 1961, the Hunters, hereinafter referred to as plaintiffs, instituted the present action against the Lawton School District, hereinafter referred to as defendant, in the Superior Court. In one of the causes of action set forth in their petition, said plaintiffs alleged, among other things, in substance, that Don Scott had given permission to the Scott School Board to erect and equip a school house on the subject one acre, and, by inference, further alleged that a part of the arrangement between him and the Board was that, if the one acre ceased to be used as a school, its use should revert to the owners of the rest of the quarter section; that, when this event occurred, plaintiffs then and thereafter being the owners of the quarter section, became entitled to the immediate use and possession of the acre, but that defendant had wrongfully withheld same from them. In that cause of action, plaintiffs prayed judgment for possession of the premises, and, in another cause of action, they prayed that their title to it be quieted. To said petition, the defendant School District filed a demurrer that was overruled.

In the Answer it thereafter filed, defendant alleged, among other things, in substance, that the hereinbefore quoted provision in the deed from the Scotts to plaintiffs' predecessor in title, Andrews, constituted an exception to the grant, or conveyance, of title effected by said deed (the obvious inference being that, as a consequence, the Andrews never obtained title to the one-acre Scott School property, and therefore their deed to plaintiffs was incapable of conveying it). In said pleading, defendant also referred to Cause No. 19397, supra, and alleged, in substance, that the judgment previously entered in its favor in said cause was "res adjudicata" as against plaintiffs.

When the cause came to trial before the Court and a jury, the parties entered into stipulations establishing the transfers of title hereinbefore mentioned, and defendant was allowed to introduce in evidence at least part of the judgment roll in Cause No. 19397, supra. Defendant thereafter apparently abandoned its previously pleaded claim that the judgment in that case was res adjudicata of any issue in this action (and it does not now claim that said judgment constituted any kind of an obstacle to plaintiffs' recovery).

Besides (Mrs.) Pearl Hunter, ten persons who had been members of the Scott School Board, and/or patrons of the Scott School and residents of the Scott School District at various times, and for varying periods, years after the execution and delivery of the 1906 Scott-Andrews deed, testified for plaintiffs. Although as far as the record shows, none of these witnesses were living in the vicinity of the school district at that early date, they were allowed to testify, under the continuing objection of the defendant, in substance, that it was the understanding of the School Board, or certain members thereof, that the Scott School District had only a possessory right in the one acre as long as it was used for school purposes, and that this right was to terminate when that use ceased. Some of the testimony tended to indicate that this was the general understanding among school students, patrons, and other residents of the Scott School District. The uncontradicted

evidence established that said District, or its Board, had never had a deed, or muniment of title, to that acre. And Mr. Keller, who testified that he was a member of the Scott School Board at the time of the annexation, also testified that said Board told the Lawton School Board, before the annexation, that the Scott School District did not own the land.

Defendant's demurrer to plaintiffs' evidence, as well as its Motion for a directed verdict at the close of all of the evidence, were overruled.

Before the trial judge submitted the case to the jury under his own instructions, he refused to give three instructions that were requested by defendant.

After its deliberations, the jury returned a verdict for plaintiffs, and judgment was entered accordingly.

Thereafter, defendant filed a motion for judgment notwithstanding the verdict and a motion for a new trial. Both motions were overruled. Thereafter, defendant perfected the present appeal.

■ In defendant's first proposition for reversal, it seeks to demonstrate error in the trial court's overruling of its challenges to the evidence, its motion for judgment notwithstanding the verdict, and its motion for a new trial, by focusing attention on the claimed weakness of the plaintiffs' title to the subject one acre, with the apparent hope that the weakness of its own claimed title will be overlooked. We are aware that, in ejectment and quiet title actions, plaintiffs must prevail on the strength of their own title, rather than the weakness of that of their adversaries; but we fail to perceive how defendant's attempt at demonstrating that the hereinbefore quoted language of the Scott-Andrews deed served to withhold that one acre from said grant, or conveyance (so that its title remained in the deed's grantors, rather than passing to its grantee) can aid defendant. (Our reasoning follows the same logic as that indicated in Stephens et al. v. Robertson et al., 190 Okl. 460, 124 P.2d 732). 16 Am.Jur., "Deeds", section 300, quoted by defendant, shows that even though the quoted language had been capable of retaining title to that one acre in the Scotts, instead of its passing by said conveyance, (with the other 159 acres of the quarter section) to Andrews (but which appears unlikely in view of its unapt wording and the presumption against this under Tit. 16 O.S.1961, sec. 29, never overcome by proof in this case) it could not have served to vest title to that acre in the Scott School District, though, according to the quoted Work " * * * an exception may *recognize and confirm* rights *already existing* in strangers; * * *". (Emphasis added). See also the Annotation at 88 A.L.R.2d 1199, 1219 ff. And it is not helpful for defense counsel to speculate that the School District may once have had a deed, now lost, to the one acre, in view of the uncontradicted evidence to the contrary.

■ The only claim to ownership of the one acre which the Scott School District could ever have had, in view of the evidence in this case, would have had to be based upon prescriptive rights. As it possessed no color of title, it could have perfected prescriptive title, by adverse possession for fifteen years *only* under *claim* of title, or *ownership*.

■■ The strongest case our independent research has revealed to support such a title is Liles v. Smith, 206 Okl. 458, 244 P.2d 582. There we held, among other things:

"3. Adverse possession must be open, visible, continuous and exclusive, *with a claim of ownership*, such as will notify parties seeking information upon the subject that the premises are *not* held in subordination to any claim of others, but against all titles and claimants.

"4. The placing of a permanent school building and other necessary appendages on the land of another, and conducting school * * * thereon is evidence of adverse and hostile possession under which title may be claimed after fifteen years.

\* \* \* \* \* \*.'"
(Emphasis added)

The above is in accord with well-settled principles referred to in City of Rock Springs v. Sturm, 39 Wyo. 494, 273 P. 908, 912, 913, 97 A.L.R. 1, as follows:

"\* \* \* the general rule in the United States is that possession will be presumed to be in subservience to the title of the true owner, and that the burden to prove adverse possession is upon the party who relies thereon. 2 C.J. 264. These rules, however, must be construed in the light of other rules, which have been adopted by our courts. Thus the intention to claim may be manifested either by words, or by acts, \* \* \*. Further, the term 'claim of right' has been treated as the equivalent of a hostile claim. (Citing authorities). The character of possession may give rise to a presumption, and it is generally held that the actual occupation, use, and improvement of the premises of the claimant as if he were in fact the owner thereof will, *in the absence of explanatory circumstances showing the contrary*, be sufficient to raise a presumption of his entry and holding *as absolute owner*, and, unless rebutted, *will establish the fact of a claim of right*. (Citing authorities). \* \* \* Thus it is said in the last case cited:

'All reasonable presumptions are to be made in favor of the true owners, including the presumption that actual possession is subordinate to the right of the true owner, subject, however, to the limitation that actual, continuous, exclusive possession for the statutory period, *unexplained*, displaces a presumption in favor of the true owner and creates a presumption of fact that such possession, and the commencement of it, were characterized by all the requisites to title by adverse possession.' \* \* \*." (Emphasis added).

The above quotations, though helpful as guide lines to apply to the evidence, do not answer the question of whether the "right and interest" recognized in the equivocal and uncertain language of the Scott-Andrews deed was an ownership "right and interest" or merely a defeasible and possessory "right and interest." If the language indicated that the Scott School District's occupation and possession of the one acre in 1906 was permissive (rather than hostile and adverse) and its right and interest in the one acre was possessory only, and in subordination to a claim of ownership on the part of plaintiff's predecessors in title, Scott and Andrews, before 1920, and, assuming the admissibility of the rather abundant testimony to the effect that during all of the years since that one, until the annexation in 1959, the Scott School District's possession of the one acre was under no claim of ownership, then the District's long and continuous possession—even for more than 50 years—never could have constituted any basis for prescriptive title.

■ Notwithstanding defendant's contentions under its "Proposition II", we think the testimony introduced on behalf of the plaintiffs was admissible to show the true character of the Scott School District's possession of the one acre (See Susquehanna, etc., R. Co. v. Quick, 68 Pa. 189, 200; Greenwich Coal & Coke Co. v. Learn, 234 Pa. 180, 83 A. 74, and other cases cited and discussed in the Annotation at 40 A.L.R.2d 770, 775 ff), even though it did not purport to deal directly with the first 15 or 18 years of that possession. We have held that the later acts and admissions of the parties to deeds, and extraneous circumstances, may be shown to ascertain the true meaning of uncertain provisions in such deeds, where such evidence does not tend to contradict the terms thereof (Hudson v. Lee, Okl., 393 P.2d 515; Lahman v. Bassel, Okl., 373 P.2d 245, and the cases therein cited); and it is a settled rule that the practical construction given an ambiguous contract, by the parties thereto, during years of operation under it, is one of the best indices of its meaning, and their intention in entering into it. In this connection, see the discussion in Port

of Mobile v. Louisville & N. R. Co., 84 Ala. 115, 4 So. 106, 110. Plaintiff's witness, Mr. J. M. Sutton, whose testimony was corroborated in several major respects by other witnesses, and who lives a mile west, and ¾ths mile north, of the Scott school property, and was a member of the Scott School Board for 17 years, beginning in 1936, and continuing until the Scott School District's annexation to the Lawton School District, testified in substance that the condition of the title to the subject one acre was discussed by the Board members when the Board was contemplating the drilling of a well for the school in 1939. This witness further testified, as follows:

"Q   At the time in 1939 when you started to dig the well, who was the record owner of the land?

"A   Well, it had been said through the past that the School District didn't own the land and personally I went to Mr. Dawes, L. T. Dawes, he was I think, probably one of the first Board members and he said that we didn't own it and so we didn't want to dig a well on somebody else's property. And we came and talked to Mr. Scott and I think we came and talked to, I believe it was Ralph Cline. I believe he was assistant County Attorney at that time. * * * And there was no records anywhere that the School District did own it. And so we wrote a letter to Mr. Andrews to buy the land and he wrote back that it wasn't for sale, but we did know that as long as we used the school that we could go ahead and dig the well and it would be all right.

*   *   *   *   *   *

"Q   Then during the time that you were on the School Board, Mr. Sutton, the School Board recognized the ownership in Mr. Andrews?

"A   As far as I know we did.

"Q   And you recognized that you had the permissive use of the land as long as you used it for school purposes?

"A   That's right. That was the understanding.

"Q   You recognized, did you, that if you ceased to use it for that, that it would go back to the record owner?

"A   That was my understanding, at least.

"Q   Did you ever convey this in any way to the present Lawton School Board?

"A   No.

*   *   *   *   *   *

*"CROSS EXAMINATION*

"BY MR. NICKLAS:

"Q   As I understand it, Mr. Sutton, when you came on the Board and during the time you were on the Board it was the position of the Board that they did not own the acre of land?

"A   As far as I know that was it, yes.

*   *   *   *   *   *."

In the present case, neither Mr. Scott nor any other party to the 1906 Scott-Andrews deed testified, and it does not appear whether they were all dead, or otherwise unavailable as witnesses; but all of the evidence indicated, without contradiction, that neither of these parties ever conveyed the fee of said acre to any school board or district. If they had ever intended to divest themselves of such an absolute estate, or to convey a determinable, or contingent, fee in said acre, they could easily have executed and delivered a conveyance that would have served that purpose. In this connection, notice Craig v. Craig's Unknown Heirs, Etc., Okl., 358 P.2d 835, and Kennedy v. Kennedy, 183 Ga. 432, 188 S.E. 722, 109 A.L.R. 1143. In addition to the testimony of others indicating that the Scott School District claimed no title to the acre during the administration of the successive school

boards who administered the school district's affairs during many of the years since 1920, the testimony of the plaintiff, Mrs. Hunter, who was a teacher at the Scott School that year, and other witnesses, shows that no masonry buildings or other permanent-type improvements were made on the school site until after that time, and that these improvements were made, notwithstanding the rather general belief, among Scott School Board members, and others, that the District did not own said land, but had possessory rights only, as long as it was used for school purposes. If it be conceded that the evidence relating to the years since 1920 and indicating that the Scott School District's occupation and possession of said acre during this period, at least, was merely permissive and without any intention to claim, or without claiming, its title or ownership, was not admissible as to the character of said District's possession of said acre *before* that time, and during the first 15 to 18 years of its duration, we think that evidence was admissible to dispel any inference of ownership which the jury might otherwise have drawn from the District's placing expensive improvements on said site (without such evidence or explanation). We therefore conclude that, despite any abstract merit in the arguments advanced by defendant to show error in the trial court's admission of such evidence, over its objection, said evidence was competent for the purpose above described; and the trial court committed no error in admitting it.

■ Consistent with our views on this case, it is our opinion that the trial court's alleged errors in refusing to give the jury defendant's requested instructions Numbered 2 and 3, present no ground for reversal. We have already indicated why we think the testimony concerning the character of the Scott School District's claim to the one acre was admissible, even though it dealt with a period of the school's history beginning more than 15 years or more after it went into possession of, and started using, the one acre as a school site. We have also indicated that since there was no language in the Scott-Andrews deed to preclude it, on its face, from being regarded as a conveyance of the fee in the entire quarter section therein described, plaintiffs, who deraigned ostensible record title to the one acre from that deed, were entitled to prevail on the strength of their own title, unless defendant discharged its burden of proving prescriptive title by adverse possession, *under claim of title or ownership*. Under the jury's verdict and the judgment, defendant failed to discharge this burden. As hereinbefore indicated, we have found no ground for reversal in the arguments presented by defendant.

The judgment of the trial court is therefore affirmed.

HALLEY, C. J., and DAVISON, WILLIAMS, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.