Harry I. DEARING, Clara E. Dearing, Harold Witcher, D. H. Mikkelson, and Anita Rogers Kamperman, individually and as Trustee under the Will of W. G. Rogers, deceased, Appellees,

v.

STATE of Oklahoma, ex rel., COMMISSIONERS OF the LAND OFFICE, Helmerich & Payne, Inc., a Delaware Corporation, American Natural Gas Production Company, Carey M. Maguire, individually, Carey M. Maguire, Trustee for Maguire Oil Company, Carey M. Maguire, Trustee for Russell Ambler Maguire, Carey M. Maguire, Trustee for Carey McIlawaine Maguire, Carey M. Maguire, Trustee for Melinda Ambler Maguire, Carey M. Maguire, Trustee for Ann Blaine Maguire, Maguire Oil Company, Daniel B. Stuart, Gasandarko, Ltd., National Bank of Arizona, Stephen B. Kahn, Appellants.

No. 53235.

Supreme Court of Oklahoma.

Jan. 12, 1982.

Rehearing Denied March 19, 1982.

---

Paul DeGraffenreid, Oklahoma City, for appellant, State of Oklahoma, ex rel., Commissioners of the Land Office.

James W. Shepherd, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for appellant, American Natural Gas Production Co.

Leon C. Gavras, Tulsa, for appellants, Helmerich & Payne, Inc., and all remaining appellants.

Joe B. McMillin, Jr., Weatherford, for appellees.

OPALA, Justice:

At issue here is the correctness of the trial court's judgment quieting title in the plaintiffs to a claimed mineral estate. Under challenge below was the State's ownership of minerals underlying 798 acres of

land. The land in litigation consists of two tracts: Tract I, known as the "railroad strip", covers a narrow strip of approximately 16 acres; Tract II comprises the remaining 782 acres. The State counterclaimed to quiet its title in the minerals underlying both of these tracts.[1] By agreement of the parties the quiet-title claims were all tried and decided first. The remaining tort claims—for alleged conversion of minerals—stand undetermined. In this appeal corrective relief is sought from the trial court's decision upon the title claims. The trial court quieted plaintiffs' title against the State in the minerals underlying Tract I—the "railroad strip". The State prevailed on its counterclaim as to Tract II. The State's appeal is from the adverse judgment as to Tract I. Since no appeal was brought by the plaintiffs, title to Tract II is not in contention here.

The plaintiffs deraign their title and interest in the surface and minerals from John L. Dearing [Dearing] who acquired the property in 1926 by warranty deed.[2] The State asserts that any interest of Dearing to the surface or minerals came to be divested and transferred to Roger Mills County [County] by resale tax deeds of April 21, 1930. These tax deeds, the State argues, preclude the plaintiffs from establishing in themselves a title which is superior to that of the State. The State's claim to a mineral title in contention here rests on a sheriff's deed of August 1, 1945 conveying the two tracts following their public sale in a mortgage foreclosure suit.

The dispositive issue is whether the resale tax deeds to the land in suit did, on April 21, 1930, operate to divest Dearing's interest and to transfer to the county a fee simple title. We hold that they did have that effect in law.

The plaintiffs contend that the tax deeds were void (a) because during the years 1929 and 1930 a county tax assessor or county treasurer was without authority to issue a lien on railroad property and (b) by the State's own "admission" the railroad company held title to the surface of Tract I, while Dearing owned the minerals in that tract. We cannot accede to this view.

 Although the conveyances in question were issued on April 21, 1930, they were, in fact and in law, resale tax deeds for ad valorem taxes assessed against the property for the year 1926. The unpaid taxes attached as a lien against the entire fee.[3] The deeds show on their face that the land in suit—subject to the 1926 tax lien—was first offered for sale at public auction on December 7, 1927. There were no bids on that date.[4] The property was again

1. There was another dispute over a 2-acre tract. The trial court determined that it had *no* jurisdiction over this tract. The State initially claimed error in the trial court's ruling but later abandoned this contention.

2. The chronology of transactions critical to this dispute is: (a) 9/25/26—John L. Dearing acquires fee simple title to the "Farm"—Tracts I and II; (b) 10/20/26—Dearing mortgages the "Farm" to the State/Commissioner of the Land Office; (c) 2/9/28—Dearing makes a "right-of-way" conveyance of Tract I to the railroad company (recorded 5/23/29); (d) 5/1/29—State releases its mortgage as to Tract I only; (e) 4/21/30—County issues resale tax deeds to the "Farm"; (f) By deeds of 10/24/30 and 12/12/30 Dearing transfers ¾ths of the minerals in the "Farm" to C. M. Finney; (g) 1/6/31—Finney conveys ¾th mineral interest to Rogers Oil and Gas Co. (recorded 1/17/31); (h) 5/4/39—State brings suit to foreclose its mortgage on Tracts I and II in which (i) on 6/2/39—State files dismissal with prejudice as

to the railroad company; (j) 11/22/44—trial court renders default judgment in foreclosure suit in favor of State; (k) 8/1/45—State acquires fee simple title to Tracts I and II at sheriff's sale following foreclosure judgment.

3. The county's tax lien was foreclosed by sale in conformity with the statutory scheme. Comp.St. 1921 § 9724. The lien attaches when the tax is due, and unless redeemed, the property is subject to sale in satisfaction of the tax. *State v. Baker*, 68 Okl. 166, 172 P. 1088, 1090 [1918]; *Phelps v. Asplund*, 184 Okl. 310, 87 P.2d 134, 135 [1939].

4. When no bids are received at the original sale, the property stands sold to the county by operation of law. *Phelps v. Asplund*, supra note 3 at 135. The issuance of a certificate following the original tax sale *is not necessary to perfect the county's purchase of the property. Culbertson v. Trope*, 194 Okl. 146, 148 P.2d 159, 160 [1944]; *Jepeway v. Barrett*, 165 Okl. 220, 25 P.2d 661, 663 [1933].

offered for sale in 1930. The resale tax deeds to the county were issued April 21, 1930.

■ The Dearing deed, by which the surface of Tract I was conveyed to the railroad, was not executed until February 9, 1928. At that time the delinquent taxes for 1926 had already become a lien on the property. The railroad hence took the surface subject to the lien. That lien could have been, but was not, discharged by a timely redemption. The plaintiffs' contention that neither the county assessor nor the county treasurer had authority to include the railroad property in the resale deed is without merit. The railroad had no interest in the surface at the time the lien had attached.

When issued, the resale tax deeds passed to the county fee simple title in Tracts I and II.[5] The title did, without a doubt, include the mineral estate. In short, Dearing's interest in the fee came to be divested.[6] Dearing became a stranger to the title after the resale tax deeds were issued to the county. He was hence out of the chain of title when he undertook to convey to the plaintiffs the mineral estate in suit.[7]

■ We reject the contention that a stipulation found in the record is fatal to the State's claim. The stipulation in issue merely recites the railroad acquired from Dearing an interest in the surface of Tract I by a deed dated February 9, 1929[8] and that the railroad had been in continuous possession of the land. It further recites that the conveyance to the railroad did not include minerals.

The quantum of the railroad's interest—whether a mere easement or title to the surface—was not the subject of the suit under review. The stipulation cannot be viewed as inconsistent with the notion that whatever interest the railroad did acquire stood impressed with a tax lien.[9] The State's acknowledgment of the railroad's continuing use of the surface in Tract I as a right-of-way does not at all derogate from the legal effect of the State's claim.

■ In a quiet title suit, such as this, the plaintiff must allege and prove that he has an interest in the minerals, either legal or equitable, otherwise the plaintiff has *no* title to quiet.[10] If he cannot prove his title to the property, his adversary's equally deficient title will not do as a basis for plaintiff's recovery. The plaintiff must recover on the strength of his own title, and not on the want or weakness of defendant's title.[11] A person who has no interest in the title to real property simply cannot maintain a qui-

---

5. *Bingham v. Worley*, 194 Okl. 238, 149 P.2d 253, 255 [1944].

6. *Jenkins v. Frederick*, 208 Okl. 583, 257 P.2d 1058, 1062 [1952]; *Hales v. Lee*, 199 Okl. 110, 184 P.2d 451, 453 [1947]. By a 1979 amendment the legislature limited the quantum of property that may be conveyed by a certificate tax deed or resale tax deed to the "... surface and surface rights and mineral interests owned by the owners of the surface rights... The certificate tax deed or resale tax deed shall not convey any other interest owned by any other individual or legal entity." Okla.Sess.L. 1979, c. 118 § 1 (68 O.S.Supp.1979 § 24323.1).

7. We need not reach here for consideration the effect of the 1944 foreclosure suit judgment—by force of which the State asserts title to Tracts I and II—upon the claimed property interest of the plaintiffs. Suffice it to say that their interest came to be extinguished by, and hence did not survive, the resale tax deeds of 1930.

8. The record reflects the correct year is 1928.

9. The State does not admit here that the conveyance to the railroad operated to vest in it title to the surface as distinguished from mere easement. Treating the interest so granted as mere easement would not be inconsistent with the stipulation in the record that a "surface interest" had been conveyed to the railroad. The quantum of the railroad's interest in the surface of Tract I—as against the County or State—is not a relevant issue in this case.

10. *Blanchard v. Reed*, 67 Okl. 137, 168 P. 664, 666 [1917]; *Exchange Trust Co. v. Ireton*, 88 Okl. 262, 213 P. 309, 310 [1923].

11. *Gilchrist v. Sutton*, 191 Okl. 117, 127 P.2d 163, 164 [1942]; *Bridwell v. Goeske*, 200 Okl. 244, 192 P.2d 656, 659 [1948]; *Robertson v. Knighten*, 192 Okl. 678, 139 P.2d 601, 604 [1943]; *Farr v. Spurck*, 207 Okl. 136, 248 P.2d 245, 248 [1952]; *Independent School Dist. No. 8 v. Hunter*, Okl., 414 P.2d 231, 234 [1966].

et title suit. While the plaintiff must rely on his own title, he need not have a title superior to persons not parties to the suit. It suffices if he has some kind of an estate in the property, legal or equitable, which is paramount to that of the defendant.[12]

The plaintiffs here cannot derive legal comfort from any flaw in the State's title to the fee. In order to prevail they must show a mineral interest of their own. That mineral interest was lost when the Dearings' title to the "farm" became divested by the resale tax deeds.

Reversed and remanded with directions to quiet title in defendants below.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN, and HARGRAVE, JJ., concur.

SIMMS, J., dissents.

SIMMS, Justice, dissenting.

I must Dissent. The majority, in my opinion, has misapprehended the dispositive issue in this appeal. It is this: May the state claim the mineral interest when its title rests on a Sheriff's Deed executed pursuant to the 1944 mortgage foreclosure—when the land in question WAS NOT MORTGAGED? The mortgage had been released and discharged of record in 1929.

I would affirm the trial court's judgment in favor of these plaintiffs (appellees).

---

12. *Welch v. Langley*, Okl., 264 P.2d 347, 350 [1953]; *Pearson v. Logan*, 208 Okl. 234, 255 P.2d 255, 259 [1953]; *Blanchard v. Reed*, supra note 10 at 666; *Smith v. Reneau*, 188 Okl. 629, 112 P.2d 160, 162 [1941].